DASHIELL, *et al. vs.* DASHIELL.—June, 1828.

In the judicial interpretation of wills, the intention of the testator is to be gathered from the entire instrument, and prevails, unless it violates some established principle of law.

Executory devises and bequests are valid, where they must take effect, if at all, within a life or lives in being, and twenty-one years and the fraction of a year afterwards.

In the case of a bequest of personal property, the courts are always studiously anxious to effectuate the intention of the testator, and will lay hold of the smallest circumstance to limit a failure of issue, (where such property is devised upon that contingency,) to the death of the first taker, so as to make the limitation over, good as an executory devise.

Where a testator devised as follows: "I bequeath unto my granddaughter E, the following negroes, viz." &c. "to her and her heirs for ever; and in case it should please God, to take my granddaughter *before she has an issue,* then the said negroes devised, to be an equal division between the rest of my heirs. And it is my will, that neither D nor J should ever have any command, or authority, over the negroes devised to my granddaughter." The legatee died without ever having had a child—*Held,* that the limitation over, was a good executory bequest to the heirs of the testator, who were such at the time of his death; and that they were entitled to the property bequeathed to them, as tenants in common.

An action of *detinue* may be maintained in this state.

APPEAL from *Dorchester* County Court. This was an action of *detinue,* brought by the present appellants, (the plain

tiffs in that court,) against the appellee, (the defendant therein,)
to recover sundry negro slaves. The following statement of
facts was agreed to by the parties, and submitted to the court
below for their judgment thereon, viz. That the negro slaves
in the declaration mentioned, were the property of, and belong-
ed to *John Dashiell,* senior, in his life-time, and at the time of
his death. That the said *John Dashiell* on the 19th of February
1817, duly made and executed his last will and testament, in
which, among other devises and bequests therein contained, is
the following: "I give and bequeath unto my granddaughter
*Elizabeth Sarah Ann,* the following negroes, viz. *Bill,* young
*Leah, Sally, Nancy, Levin, Stephen, Noah,* to her and her
heirs forever; and one bed and furniture; and in case it should
please God to take my granddaughter *Elizabeth Sarah Ann,*
before she has an issue, then the said negroes devised, to be an
equal division between the rest of my heirs. And it is my
will and desire, that neither *Ichabod Dashiell,* nor *Thomas
Jones,* of *Thomas,* should ever have command or authority
over the negroes devised to my granddaughter *Elizabeth Sarah
Ann.*" That the testator, soon after making the said will,
died, leaving it in full force and operation, having thereby be-
queathed the said negro slaves to his granddaughter *Elizabeth
Sarah Ann Dashiell,* as by reference to the said will may
more fully appear. That in pursuance of the said bequest, the
said negro slaves were, delivered over by the executor, named
in the will of the testator, to the said *Elizabeth Sarah Ann.*
That the said *Elizabeth Sarah Ann* never was married, nor
had any child, or children, but died some time in the year 1823,
intestate, leaving *Priscilla Dashiell,* her mother, and several
brothers and sisters of the half blood by the second marriage
of her mother, the defendant, with the said *Ichabod Dashiell,*
mentioned in the said will. That the said *Ichabod Dashiell*
died a few days before the death of the said *Elizabeth Sarah
Ann.* That *Thomas Jones,* of *Thomas,* mentioned in the
said will, married the sister of the defendant. That the plain-
tiffs in this action are the heirs of the said *John Dashiell,* the
testator, and mentioned by him in his said will as the persons
to whom the negro slaves were bequeathed and limited in case
the said *Elizabeth Sarah Ann* should die before she had an

issue. That the said negro slaves have been and still are in the possession of the said *Priscilla*, the defendant, since the death of the said *Elizabeth Sarah Ann*, and of the said *Ichabod;* and the said *Priscilla* claims the said negro slaves on behalf of herself, and children, by the second marriage, as the legal representatives of the said *Elizabeth Sarah Ann;* and the plaintiffs claim the said negro slaves under the limitation in the said will. If the court, upon the matter stated, and from the above facts as stated, should be of opinion that the law is with the plaintiffs, and that they are entitled to recover in this action, then judgment is to be entered for the plaintiffs for the negro slaves mentioned in the declaration, or their respective values as therein stated, and $94 50, damages for the detention, and costs. But if the court should be of opinion that the law is with the defendant, and that the plaintiffs are not entitled to recover, then judgment to be entered for the defendant, with costs. The county court rendered judgment on the case stated, for the defendant; and the plaintiffs appealed to this court.

The cause was argued before EARLE, STEPHEN, ARCHER, and DORSEY, J.

*J. Bayly*, for the Appellants.

*Kerr*, and *R. N. Martin*, for the Appellee, contended, that the executory bequest in dispute, gave to the devisee an absolute interest in the slaves; the limitation over resting upon an indefinite failure of issue, and being therefore too remote. They insisted on the force and legal import of the general expressions employed, and that there were no words or circumstances in the will indicating an intention in the testator to limit the generality of the expressions to a failure of issue at the time of the death of the first devisee. They cited *Butler's Fearne*, 440, 460, 485. *Davidge v Chany*, 4 *Harr. & M'Hen.* 393. *Bramluck v Dorman*, 2 *Atk.* 308. *Hope, ex dem. Brown & Wife v Taylor*, 1 *Burr.* 268. *Brigg v Bensly*, 1 *Bro.* 188. *Everett v Gill*, 1 *Vez. jr.* 286. *Chandlers v Price*, 3 *Ves.* 99. *Barlow v Salter*, 17 *Ves.* 477. *Elton v Eason*, 19 *Ves.* 73.

STEPHEN, J. delivered the opinion of the court. This case comes up on an appeal from a judgment rendered in *Dorches-*

*ter* county court, on a statement of facts agreed upon by the counsel, containing, among other things, the following clause in the last will and testament of *John Dashiell:* "I give and bequeath unto my granddaughter, *Elizabeth Sarah Ann*, the following negroes, to wit. *Bill,* young *Leah, Sally, Nancy, Levin, Stephen, Noah,* to her and her heirs forever; and one bed and furniture; and in case it should please God to take my granddaughter, *Elizabeth Sarah Ann*, before she has an issue, then the said negroes devised, to be an equal division between the rest of my heirs. And it is my will and desire, that neither *Ichabod Dashiell,* nor *Thomas Jones,* of *Thomas,* should ever have any command or authority over the negroes devised to my granddaughter, *Elizabeth Sarah Ann.*" And this court is now called upon to determine the true construction of the above recited clause, and to decide whether the limitation over, after the bequest to *Elizabeth Sarah Ann,* the first legatee, is valid and operative as an executory bequest, according to the established principles of law. The position is undeniable, that in the judicial interpretation of wills, the intention of the testator, to be gathered from the entire instrument, shall prevail, unless it violates some established principle of law. And the single question presented for our adjudication is, whether *Elizabeth Sarah Ann,* upon the true construction of the will of her grandfather, became entitled to the absolute property in the negroes bequeathed to her; or whether the limitation over to the heirs of *John Dashiell,* the testator, was good, as a valid executory bequest? Upon the rule then, that the mind of the testator, as expressed in his last will and testament, shall be carried into effect, unless it infringes some well settled legal principle, it is the duty of this court to ascertain what the intention of the testator was, and to execute that intention if warranted by law in so doing. The bequest is to *Elizabeth Sarah Ann,* to her and her heirs forever. So far it gives her, most unquestionably, the absolute interest in the subject of the bequest; but it proceeds, and states, "and in case it should please God to take my granddaughter *Elizabeth Sarah Ann,* before she has an issue, then the said negroes devised, to be an equal division between the rest of my heirs." The limitation over is only to take effect, in the event of the first legatee dying *before she had an*

*issue.* If then, according to the express words of the will, the executory bequest was only to take effect upon the happening of a contingency, which if it happen at all, must happen within a life in being, it may be asked, upon what principle of law such a bequest can be invalidated? Can there be a doubt that so soon as *Elizabeth Sarah Ann* had a child, (for such is the obvious meaning of the terms used,) the limitation over as an executory disposition of the property, was absolutely gone forever; and that if the contingent interest, bequeathed to the heirs, could ever become vested, it could only be upon the happening of the event of her dying without ever having had a child during her lifetime? If this is a correct construction of the words of the will, there is nothing in the principles or policy of the law, in relation to this branch of the science, which would inhibit the court from carrying into effect the limitation over as a valid testamentary disposition of that portion of his estate; the rule of law being, that all executory devises and bequests are good, where they must take effect, if at all, within a life or lives in being, and twenty-one years and the fraction of a year afterwards. We do not think that the counsel for the appellee were successful in the position which they endeavoured to maintain, that this was nothing more than simply a case of dying without issue, and, therefore, an indefinite failure of issue, and consequently too remote a contingency, for the limitation over to be good; because, as has been already remarked, the failure of issue, if it occurred at all, must have occurred at the time of the death of the first taker, and not afterwards; because the legatees over were only to take, if they took at all, upon the first legatee dying, (in the language of the will,) "before she had an issue." Which certainly cannot mean a dying after she had issue, so that it might have been possible for the testator to have meant an indefinite failure of issue. On the contrary, it is conceived, that the meaning of the testator, defining and limiting the failure of issue to occur in a life or lives in being, could not have been couched in language more strongly expressive and unequivocal. It is also worthy of recollection, that this is the case of a bequest of personal property, where the court are always studiously anxious to effectuate the intention of the testator, and will lay hold of the smallest circum-

stance to limit the failure of issue to the death of the first taker, so as to make the limitation over good as an executory bequest. Wherever it is manifestly the intention of the testator, as we think it was his intention in this instance, to limit personal property over, upon a failure of issue at the death of the first taker, that intention must be carried into effect. The case of *Elton v Eason*, 19 *Ves.* 73, which was relied upon by the counsel for the appellee, does not appear in any degree to militate against the construction given to the words of this will. That was a devise to trustees of real and personal property, upon trust, to apply the rents and profits, for the son of the testatrix, during his life, and afterwards for the heirs of his body, if any; and in default of such issue, then upon a further trust. The Master of the Rolls determined, that the words, if any, could not vary the construction, because, if not expressed, they would necessarily have been implied; because, to use his own language —"To be sure if there were no heirs of his body, none could take." In the case of *Crooke v De Vandes*, 9 *Ves.* 197, referred to in this case of the Master of the Rolls, the limitation was to one, and to the heirs of his body lawfully issuing; and if he has no such heirs, then over. The Lord Chancellor held, that the leasehold property vested absolutely in the first taker. The Lord Chancellor must have considered the superadded words, "and if he has no such heirs," as meaning only, that upon the failure of such heirs as had been mentioned, the limitation over was to take effect; but the language of that case is very different from that of the case before this court, which is, that if the first taker dies before she has an issue, (or child as we suppose the meaning to be,) then the limitation is to take effect.

This court are, therefore, of opinion, in this case, that the limitation over was a good executory bequest to the heirs of the testator, who were such at the time of his death; and that they hold the property bequeathed to them, as tenants in common.

The judgment of the court below must be reversed, and judgment entered upon the case stated for the appellants, the plaintiffs in the court below.

JUDGMENT REVERSED, &c.