## SAFE DEPOSIT AND TRUST CO. *v.* REGINALD W. HUTTON.

[No. 7, January Term, 1930.]

*Decided April 11th, 1930.*

The cause was argued before Bond, C. J., Pattison, Urner, Adkins, Offutt, Digges, Parke, and Sloan, JJ.

*George Weems Williams* and *William L. Marbury, Jr.*, with whom were *Marbury, Gosnell & Williams*, on the brief, for the appellant.

*Hall Hammond*, for the appellee.

Pattison, J., delivered the opinion of the Court.

The appeal in this case is from an order of the Circuit Court No. 2 of Baltimore City, overruling a demurrer to the amended bill of complaint, filed by the appellee, Reginald W. Hutton, against the appellant, the Safe Deposit and Trust Company of Baltimore, trustee.

The bill alleged the execution of a will by Celeste M. W. Hutton on the 21st day of June, 1919, and a codicil thereto on the 17th day of November, 1922, and in the bill are set out in full the fifth and seventh items of the will, and with it were filed, as parts thereof, copies of both the will and codicil.

52

Item five devised to testatrix's son, Reginald W. Hutton, certain lands known as "Crimea" for life, with power to sell and convey the whole or any part thereof, with the written consent of the Safe Deposit and Trust Company, trustee:

"my said son to retain the proceeds of said sale or sales, provided he shall then have reached the age of thirty-five years, otherwise, the proceeds of said sale or sales are to be retained by my trustee, hereinafter named, and held by said trustee upon the same trusts and for the same persons and purposes and subject to the same rights and powers of my said son in and over the same, principal and income, as are mentioned and declared respecting my son's share of the rest and residue of my estate.

"And from and after the death of my said son, I give and devise the above-mentioned lands known as 'Crimea,' or such part thereof as may not have been sold and conveyed by my said son during his lifetime, as hereinbefore authorized, to such persons or objects as my said son shall limit and appoint by his last will and testament executed according to the laws of Maryland, after he attains the age of thirty years, full power and authority being hereby given to him to make and execute such last will and testament; and in case my said son does not exercise such power of appointment or in so far as his said will shall fail to operate upon said lands, then I give and devise the same to the child, children and descendants of my said son living at the time of his death *per stirpes* and not *per capita;* and should my said son die without descendants surviving him and without having exercised such power of appointment or in so far as his will may fail to operate thereon, then I give and devise the same to his sisters and the children of a deceased sister then living *per stirpes* and not *per capita.*"

Item seven devised and bequeathed all the rest and residue of testatrix's property and estate to the Safe Deposit and Trust Company of Baltimore, in trust, and, of the net income therefrom, each of the testatrix's two daughters was to re-

ceive one-third for life, and her son Reginald W. Hutton was to receive one-third thereof "until the termination of the trusts hereinafter created and declared respecting my son's share of the corpus." To each of the daughters, power was given to dispose of her interest by will and, upon her failure to exercise that power, provision was made for the disposition of her interest in said rest and residue of the estate. Then follows the provision as to the ultimate disposition of the son's share in said rest and residue of the estate, which is as follows:

"And I further will and direct that should my said son attain the age of thirty-five years, my said trustee may from time to time, after my said son reaches said age, pay over and deliver to him the remaining one-third of the corpus or principal of the trust estate as may then be in possession of my said trustee, or such part or parts thereof as my said son may from time to time, after he reaches said age of thirty-five years, in writing designate, and in further trust to pay over and deliver so much and such part of the said one-third of the corpus or principal of the trust estate as may not have been paid over to my said son after he arrives at the age of thirty-five years, as hereinbefore authorized, to and for the use of such person or persons and such purposes as he, my said son, may limit and appoint by his last will and testament, duly made and executed according to the laws of the State of Maryland, after he attains the age of thirty years, full power and authority being hereby given my said son to make and execute such last will and testament, should, however, my said son depart this life leaving a child or children or descendants of a deceased child or children surviving him, then I will and direct that the whole or such part of said one-third of the corpus or principal of the trust estate, and in the hands or possession of my trustee at the death of my said son, and which may not be affected by his last will and testament executed as aforesaid, shall, upon the death of my said son, be

54

paid over and delivered by my trustee free, clear and discharged of any and all trusts created by my will to the child or children and the descendants of a deceased child or children of my said son, who may survive him, *per stirpes* and not *per capita,* but should my said son depart this life without leaving a child or children or descendant of a deceased child or children surviving him, then I will and direct that the whole or such part of said one-third of the corpus or principal of the trust estate then remaining in the hands or possession of my trustee and which may not be affected by his last will and testament executed as aforesaid, shall, upon the death of my said son be paid over by my trustee, free, clear and discharged of any and all trusts created by my will, to his surviving sister and the descendants of a deceased sister *per stirpes* and not *per capita.*

"And I do hereby will and direct that my trustee shall as soon as may be convenient after my death appraise and value my estate known as 'Crimea,' together with the said lot on Franklin Turnpike Road and improvements formerly occupied as a toll gate house and my estate known as 'Alexandroffsky'; whereupon my said trustee is hereby authorized, empowered and directed to deduct from and retain out of the share of my estate held in trust for my said son such sum as may be the difference between one-third of the combined value so ascertained of 'Crimea' and said toll gate house property and 'Alexandroffsky' and the value so ascertained of 'Crimea' and said toll gate house property, and to that extent reduce the share of my residuary estate held in trust for my son as above set forth. The amount so deducted from my son's share of my residuary estate is to be retained by my trustee and held upon the same trusts and for the same persons and purposes and subject to the same rights and powers of my said daughters respectively in and over the same, principal and income, as are hereinbefore mentioned and declared respecting my daughter's shares respectively of the rest and residue of my estate.

Then followed the codicil, which is as follows:

"Having recently sold to The Northwest Real Estate Company, for the sum of one hundred and eight thousand seven hundred and fifty dollars ($108,750) about eighty (80) acres of my lands * * * known as 'Crimea,' I hereby give and bequeath the sum of one hundred thousand dollars ($100,000) to my son Reginald W. Hutton absolutely upon his arrival at the age of thirty-five years, and should my son die before he reaches the age of thirty-five years, then said sum of one hundred thousand dollars ($100,000) is to be retained by my trustee named in my said will and held by said trustee upon the same trusts and for the same persons and purposes and subject to the same right and powers of my said son in and over the same, principal and income, as are mentioned and declared respecting my son's share of the rest and residue of my estate."

The bill then alleged that Reginald W. Hutton arrived at the age of thirty-five years on the 29th day of June, 1929, and on the first day of July, thereafter, he made demand in writing on the Safe Deposit and Trust Company, trustee, for "the transfer and delivery unto him of the corpus of the one-third of the rest and residue of the estate of his mother" so held in trust for his use and benefit. The demand so made was in the form of a letter from him addressed to the Safe Deposit and Trust Company, trustee, and is as follows:

"Dear Sirs:

"I hereby make demand upon you to pay over and deliver to me the entire one-third of the corpus or principal of the estate held by you as trustee for me under the will of my mother, Celeste M. W. Hutton, in accordance with the terms of the fourth paragraph of Item Seven of said will.

"I attained the age of thirty-five on Saturday, June 29, 1929."

It is then alleged that the Safe Deposit and Trust Company, trustee, by letter, dated the 23rd day of July, 1929,

refused to comply with such demand, a copy of which letter was filed with the bill and is as follows:

"My Dear Mr. Hutton:

"Your letter of July 1, 1929, making demand upon us as trustee under the will of your mother, Celeste M. W. Hutton, to pay over and deliver to you the entire one-third of the corpus or principal of the estate held by us as trustee for you and advising that you attained thirty-five years of age on June 29, 1929, received.

"In reply we beg to inform you that we are advised by counsel that you have not the right to make such demand, but that your mother's will confers upon this company as trustee a discretion to be exercised by it as such trustee, and accordingly we cannot comply with your demand."

The prayer of the bill asked the court to construe the terms and provisions of the will and codicil with respect to the share of the rest and residue of the estate of Celeste M. W. Hutton, held in trust for the use and benefit of Reginald W. Hutton, her son, and to "determine that there is no discretion vested in the trustee to withold from" the plaintiff "after his arrival at the age of thirty-five years, and upon his written demand, any portion of the trust estate so held for his use and benefit."

The grounds of the demurrer to the bill, which was over-ruled, were, first, that "it appears from the face of the bill of complaint that under the provisions of the last will and testament of Celeste M. W. Hutton" the "defendant is vested with a discretion to withhold or deliver the trust estate held by it for the benefit of the plaintiff to him free, clear and discharged of the trust created by said Last Will and Testament." Second, that "the sisters of the plaintiff and their respective children are necessary parties and should, therefore, be made parties to this proceeding."

The contention of the trustee that the delivery and transfer of the appellee's share in said trust estate is subject to its discretion and not mandatory upon it, is, it seems, largely based upon what was said in the opinion of this court in

*Hutton v. Safe Deposit & Trust Co.,* 150 Md. 539; and, as stated by the appellant in its brief, the trustee was guided in its refusal to comply with the demand of the appellee, by what was there said.

In *Hutton v. Safe Deposit & Trust Company, supra,* the court was asked to decide what effect was to be given to the legacy of $100,000 to her son, contained in the codicil, it being a part of $108,750, received by the testatrix for eighty acres of "Crimea," devised to her son, and sold by her after the execution of the will, in ascertaining the owelty necessary to equalize the shares of Reginald W. Hutton and his sisters, as directed by the last paragraph of item seven of the will. As construed by the appellant, the language there used made it essential for Hutton to obtain the consent of the trustee before any part of his interest in said trust estate should be paid to him, the inference therefrom being that the trustee had the discretion to withhold from him payment of any part of said trust estate held for his use and benefit.

The language used from which the appellant reaches the above stated conclusion, is found in the herein italicized portions of that part of the opinion, in which it is said:

"The codicil gives the $100,000 legacy to the son, absolutely upon his arrival at the age of thirty-five years, and then provides that if the son dies before he reaches the age of thirty-five, the $100,000 should be held by the trustee in the same manner as the son's share of the rest and residue of the estate. It will thus be seen that the directions contained in the codicil in respect to the $100,000 legacy are identical with the provisions contained in the will in respect to "Crimea," with the single exception that the son receives the $100,000, when he reaches thirty-five years of age, *without having to obtain the consent of the trustee.* In other words, if the testatrix had not sold any part of 'Crimea' after making the will, and the eighty acres had been sold by the son, after her death, it would have been necessary for him to get the consent of the trustee to make the sale, and the proceeds would have been held by the trustee until he became thirty-five years of age, at which time, upon application by him in writing to

the trustee, it would have been turned over to him; while under the provisions of the codicil, the mother having made the sale during her lifetime, the approximate proceeds of said sale are placed in the hands of the trustee to be paid to the son upon his arrival at thirty-five years of age, *without making it necessary for the son to apply in writing for the consent of the trustee; the testatrix by the codicil, in effect, substituting her consent that it be paid over at the son's arrival at the age of thirty-five, in the place of the trustee's consent."*

The language relied upon by the appellant in the conclusion reached by it must be considered with other parts of the opinion, with which it is connected and used. For instance, to ascertain what was meant by the court in saying "the son receives the $100,000 (legacy) when he reaches thirty-five years of age, *without having to obtain the consent of the trustee,"* we must consider it in the light of that which follows, where it is said: "In other words, if the testatrix had not sold any part of 'Crimea,' after making the will, and the eighty acres had been sold by the son after her death, it would have been necessary for him to get the *consent of the trustee to make the sale* and the proceeds would have been held by the trustee until he became thirty-five years of age, at which time, upon application by him in writing to the trustee, *it would have been turned over to him."* This last clause of the opinion, we think, clearly shows that the "consent of the trustee" had reference to the sale of the property and not the transfer or payment of the appellee's interest in the trust estate. Following the clause of the opinion last quoted, it is said: "While under the provisions of the codicil, the mother having made the sale during her lifetime, the approximate proceeds of said sale are placed in the hands of the trustee to be paid to the son upon his arrival at thirty-five years of age, without making it necessary for the son to apply in writing for the consent of the trustee." There is likewise no difficulty in ascertaining what was there meant in the use of the words "consent of the trustee," as the preceding words are explanatory of their meaning. The words simply mean

that, as the mother had made the sale during her life, the son was relieved of the necessity of obtaining the consent of the trustee to sell as required by the will.

We now come to the concluding part of the paragraph immediately following the language above quoted, where it is said: "The testatrix by the codicil, in effect, substituting her consent that it be paid over at the son's arrival at the age of thirty-five, in the place of the trustee's consent." This last expression may be misleading, and were it not for what had been previously said, it might be susceptible of the construction placed upon it by the appellant, but when these words are considered in connection with the preceding language of the paragraph, it will be shown that such was not the intended meaning of the court.

The language of the will which we are asked to construe is, "and I further will and direct that should my said son attain the age of thirty-five years my said trustee may from time to time, after my said son reaches said age, pay over and deliver to him the remaining one-third of the corpus or principal of the trust estate, as may then be in possession of my said trustee or such part or parts thereof as my said son may from time to time, after reaching said age of thirty-five years in writing designate."

In construing the language used above, the entire will should be carefully examined and the language there employed, considered in the light of the circumstances surrounding its execution, in order that the testatrix' meaning and intention in the use of such language may be ascertained, and when that is ascertained, the language used must be given the effect intended by her, if it is not inconsistent with some established or settled rule of law or of property. *Beall v. Holmes,* 6 H. & J. 206; *Berry v. Berry,* 1 H. & J. 417; *Dashiell v. Dashiell,* 2 H. & G. 127; *Douglas v. Blackford,* 7 Md. 8; *Smithers v. Hooper,* 23 Md. 272; *Young v. Twigg,* 27 Md. 621; *Poultney v. Tiffany,* 112 Md. 630; *Maryland Casualty v. Safe Deposit & Trust Co.,* 115 Md. 339; *Miller v. Weber,* 126 Md. 658; *Gray v. Orphans' Home,* 128 Md.

592; *Pattison v. Farley,* 130 Md. 408; *Ball v. Townsend,* 145 Md. 589.

The will discloses that the testatrix was careful to equalize the gifts and devises to her children in respect to the amounts thereof, but not so as to the extent of the estate therein or the rights and powers thereto attached.

In the devise to the daughters of the lands known as "Alexandroffsky," they were given the power, upon the written consent of the trustee, to sell the whole or any part of it, but the proceeds thereof were to be received by the trustee and held by it upon the trust and for the persons and purposes therein stated. In the devise of "Crimea" to Reginald W. Hutton, the son, a like power of sale was given to him, but when the sale was made, the proceeds were to be retained by him, if he, at that time, had reached the age of thirty-five years, and unlike the provisions contained in the devise of "Alexandroffsky" to the daughters, it was not to be paid to the trustee unless, at the time of the sale, the son had not reached the age of thirty-five years, in which event it was to be paid to the trustee and held by it upon the trusts and for the persons and purposes therein stated.

The rest and residue of the estate was devised to the Safe Deposit and Trust Company, Trustee, to collect the rents, income and profits therefrom, and of the net profits, one-third was to be paid to each of the daughters "for and during the full term of her natural life"; while the remaining one-third was to be paid to Reginald W. Hutton, as stated in the will, *"until the termination of the trust hereinafter created and declared respecting my son's share of the corpus."*

Provision is then made with respect to the disposition of the daughters' shares after death, and immediately following is found the clause of the will under consideration, which has application to the share of Reginald W. Hutton in such rest and residue of the estate.

Three years after the execution of the will, and three years before her death, when her son was twenty-eight years of age, the testatrix executed the codicil thereto. The evident necessity therefor arose from the fact that she had sold eighty

acres of "Crimea" for $108,750, which she had previously devised to her son, and, as she states in the codicil, having sold so much of said lands, "I hereby give and bequeath the sum of $100,000 to my son Reginald W. Hutton absolutely upon his arrival at the age of thirty-five years," but, as provided therein, if he died before reaching that age, it was to be held by said trustee upon the trusts and for the persons and purposes and subject to the same right and powers of my said son in and over the same, principal and income, as are mentioned and declared respecting my son's share of the rest and residue of my estate."

It is therefore evident that the testatrix had firmly fixed in her mind the time when her son should receive full possession, control, and management of the property and estate devised to him, free, clear, and discharged from the trusts, and that time was when he had reached the mature age of thirty-five years, for it was then that he was to retain the proceeds of the sale of the lands devised to him, which he, under the provisions of the will, was empowered to sell, and it was also at that age that he, under the provisions of the codicil, was to receive the legacy of $100,000. That she had in mind a time when the trust as to the share of her son would end, other than at his death, is further shown by the concluding clause of a preceding paragraph in item seven, where it is said, "and the remaining one-third thereof (speaking of the net income from the rest and residue of the estate) to my son, Reginald W. Hutton *until the termination of the trusts hereinafter created and declared respecting my son's share of the corpus.*"

The age of thirty-five years is used again by the testatrix in connection with the time of payment and transfer of the son's share of the trust estate in the clause of the will now under consideration, where it is said the "trustee *may* from time to time," after her son reached the age of thirty-five years, "pay over and deliver to him the remaining one-third of the corpus of the trust estate" then in the possession of the trustee.

It is, however, upon the use of the word "may," found in this clause of the will last referred to, that the appellant contends that the right of Hutton to have paid and delivered to him, upon his arrival at the age of thirty-five years, his share of the trust estate, is subject to the discretion of the trustee; this contention is made notwithstanding the provisions of the will and codicil to which we have alluded, so strongly indicating that it was the intention of the testatrix that her son was to have and receive his share of the trust estate after reaching the age of thirty-five years, and also notwithstanding the fact that Hutton had the unquestionable right under the provisions of the will to retain, without the consent of the trustee, the proceeds of a sale of "Crimea" made after he arrived at the age of thirty-five, while by the contention made by the appellant he would not be entitled, after reaching that age, to the proceeds of a sale of said property made one day before he had reached the age of thirty-five years.

We cannot believe that, by the use of the word "may" as used, the testatrix intended to change the meaning gathered from the previous provisions of the will that her son should have his share of the trust estate after reaching the age of thirty-five years. It was not, in our opinion, the intention of the testatrix to vest in the corporate trustee a discretion, to be exercised by its officials, to withhold from the son, after demand made, any part of his share of the corpus of the estate, after his arrival at the age of thirty-five years.

After a careful consideration of the whole will, it was, we think, the intention of the testatrix that, when the son reached the age of thirty-five years, he could demand and receive from the trustee the whole of his one-third share of the corpus of the trust estate, free, clear and discharged from the trust, but should he not then demand its payment or transfer, it was not necessarily incumbent upon the trustee to pay at such time the whole thereof over to him, but, by the language above used, it was thereafter permitted "from time to time" to "pay over and deliver to him" his share of the trust estate then in the hands of the trustee, "or such part or parts thereof" as her

son might thereafter "from time to time in writing designate."

It is further contended by the appellee that the bill is defective because the sisters of the appellant, and their respective children, should have been made parties to this proceeding.

As a general rule, in equity cases, all persons should be made parties who are either legally or beneficially interested in the subject matter and result of the suit; though there are exceptions to this rule. *Miller's Equity Procedure,* sec. 21. As said by Mr. Miller (section 19): "Upon no subject are the decisions of the courts more various and apparently conflicting than upon the subject as to who should be parties to suits in equity. It is impossible to state a rule applicable to all cases. The courts have used different language in defining the doctrines; and the text books, as well as decided cases, show a great variety of exceptions."

The general rule as to trustees, as stated by that learned author, section 35, is: "If the powers and duties of a trustee are such as to constitute him the representative of the beneficiaries, the latter are not necessary parties to an action by or against him in relation to the trust estate. Whether in a given case a trustee is such a representative is to be determined from a consideration of the instrument by which, and the purposes for which, he was appointed. The question can usually be decided by considering whether the trustee has an unqualified power to sell and give receipts; if he has, he represents the beneficiaries."

In the early cases both here and in England, a distinction was made in suits between trustee and stranger and those between trustee and beneficiary, as to who should be made parties thereto. In the latter cases the rule was adhered to with much strictness, while in the former cases, where there was no conflict between the trustee and the beneficiary, or between the beneficiaries themselves, the same strictness was not required, and the trustee was permitted to represent the interest of the beneficiaries, when he would not have been permitted to do so had the suit been between him and a beneficiary.

*Miller's Equity Procedure,* secs. 43 and 44; *Perry on Trusts,* secs. 873 and 875.

The difficulties arising from the application of the general rule requiring trustees and beneficiaries to be made parties gave rise to the passage, in the year 1841, of the English chancery order which provided that trustees with certain powers should represent the beneficiaries of real estate held in trust, in the same manner as executors and administrators representing the beneficiary in suits concerning personal estate. This was followed by a similar order passed by the federal courts in 1842; and later in 1883, a like equity rule was adopted in Maryland, which was extended to personal estate. This rule is now section 197 of article 16 of the Code, which is as follows: "In all suits concerning real or personal estate, where the entire estate sought to be affected by the decree or order prayed for is vested in trustees, under any deed, will, or other instrument, with an immediate and unqualified power of sale, coupled with the right to give receipts, such trustee shall represent the persons beneficially interested under the trust, in the same manner and to the same extent as the executors or administrators in suits concerning personal estate represent the persons beneficially interested in such personal estate; and in such cases it shall not be necessary to make the persons beneficially interested under the trust, parties to the suit. But any party interested may, upon his own application, be allowed to come in and be made a party to such proceeding, and the court or judge thereof may, upon consideration of the matter on the hearing, if it should be deemed proper, order such persons or any of them, to be made parties."

It is upon this rule that the appellee contends that it is not essential that the beneficiaries in this case should be made parties to the proceeding, and this view was adopted by the court below in overruling the demurrer.

The appellant contends that this rule or section of the Code applies to suits between trustee and stranger, and not to suits between trustee and beneficiary, like the one now under consideration, and that the distinction, previously

recognized in suits between trustee and stranger and suits between trustee and beneficiary, has not been removed by the adoption of the rule, and specially urges upon us that the expression "all suits concerning real or personal estate" found in the rule, is not, in itself, sufficient to give to the rule the effect contended for by the appellee. In deciding the question of the application of the rule, this court, so far as we know, has never recognized the distinction here contended for in cases between trustees and strangers and trustees and beneficiaries. It would seem that the inquiry to be made is whether the suit or proceeding falls within the provisions of the rule, and in so deciding much depends upon the provisions in the will or other instrument by which the trust was created. Applying this test to the case before us, we think it falls within the rule, though we need not here decide that question, for in our opinion the decision of the question here presented is controlled by the decision in *Darne v. Catlett*, 6 H. & J. 390. In that case, one Gassaway, the father of Polly Catlett, one of the appellees, bequeathed to his executors $6,000 with the direction that they should pay the interest thereon annually to his daughter for and during her natural life, if, in their opinion, or the opinion of the survivor, it should be necessary for her decent support, with the further direction that, upon her death, the said sum of $6,000 with the interest accrued thereon, if any should remain unexpended, to be equally divided among the three children of the said Polly Catlett, or the survivor of them. The executors, who accepted the trust, failed, or refused, as trustees, to pay the interest annually to Polly Catlett, as directed by the will, and she, with her husband, filed a bill asking among other things that the executors, as trustees, be made to pay annually to her the interest on said sum. The point was made on behalf of the trustees that the daughter's living children named in the will, who were to receive the principal sum of $6,000 upon the death of the mother, were necessary parties. The court, speaking through Judge Archer, said: "It is a general rule, that all persons interested in the subject

of a suit should be made parties, whether that interest be legal or beneficial. The reason of this principle is, that the court may be enabled to make a complete decree between the parties, may prevent future litigation by rendering a multiplicity of suits unnecessary, and may make it perfectly certain that no injustice shall be done either to the parties before the court, or to others who may be interested in a decree that may be grounded upon a partial view only of the real merits, *Mitford,* 29, 220, 144; *Cooper Eq. Pl.* 185. To this general rule there are many exceptions growing out of cases where, consistently with practical convenience, it would be incapable of application. *West v. Randal,* 2 Mason's Rep. 181, 190, per Story, J. To those cases it is entirely unnecessary to advert, because we do not conceive that the case before us comes within the scope of the general rule. The mother applies to the court to compel the application of the interest to relieve her necessities. This application for relief is confined to the terms of the trust, and to that portion of the trust money to which she has an interest. The principal belonging to her children is not sought to be affected. It is true they have an interest in any balance of this fund, applicable to her use, which at her death may remain unexpended. But the power conferred is entirely discretionary in the executors, and they are at liberty to apply the whole of it to the mother, if they deem it proper. Having this unlimited discretion reposed in them, it is believed that they could not be held accountable to the children."

In the case before us the interest of those who, it is claimed, should be made parties to the proceedings, in the property bequeathed and devised to Hutton, is extremely remote. By the terms of the will it was in the power of Hutton, with the consent of the trustee, to sell such property, and also to dispose of it by will, after reaching the age of thirty years, thereby depriving said persons of any and all possible future interest in the property. It may also be said that, by the provisions of the will, the trustee had the full power to sell, dispose of, and convey said property and to invest and reinvest the funds arising therefrom. The power of the

appellant, as claimed by it, to withhold from Hutton his share of the trust estate after his arrival at the age of thirty-five years, is only a discretionary power, similar to that conferred upon the trustee in the case of *Darne v. Callell, supra,* where the court said, as the power conferred was entirely discretionary in the executors or trustees, they were at liberty to apply the whole of the interest to the mother if they deemed it proper to do so, and having that "unlimited discretion reposed in them" it was the opinion or belief of the court that they, the trustees, "could not be held accountable to the children," to whom the principal sum, as well as any unexpended interest, was to be paid upon the death of the mother. In that case there was a discretionary power in the trustee, which is all that it is claimed in this case; the court held that the beneficiaries were not necessary parties. Thus, if the question here presented was to be determined upon the appellant's contention, that there was a discretionary power in the trustee to withhold from Hutton his share of the trust estate after his arrival at the age of thirty-five years, even then the beneficiaries named are not necessary parties to the proceeding.

In this case, however, we hold that the trustee had no such discretionary power, but that it was its absolute duty, on demand being made upon it, by Hutton, to pay over and transfer to him his share in said trust estate upon his arrival at the age of thirty-five years, and as we so hold, there is certainly no need of the beneficiaries being made parties to this proceeding.

From what we have said, the order or decree of the lower court will be affirmed.

*Order or decree affirmed, costs to be paid out of the appellee's share of the trust estate.*