THE FIRST NATIONAL BANK OF MARYLAND
ET AL. *v.* DEPARTMENT OF HEALTH
AND MENTAL HYGIENE ET AL.

[No. 63, September Term, 1978.]

*Decided April 11, 1979.*

Argued and reargued by *Daniel H. Honemann,* with whom were *Roger A. Clapp, Robert Sloan* and *Clapp, Somerville, Black & Honemann* on the brief, for appellants.

Argued and reargued by *Francis X. Pugh, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General,* on the brief and *Stephen H. Sachs, Attorney General,* on supplemental brief, for appellees.

DIGGES, J., delivered the opinion of the Court.

The event that precipitated this case occurred in mid-1975 when the petitioners, the trustees of a trust created by the will of Annesley Bond Baugh, were notified by respondent Maryland Department of Health and Mental Hygiene that as of July 1, 1975, the charge to the trust for the care of the testatrix's daughter at Spring Grove State Hospital was being increased. The daughter, also named Annesley Bond Baugh, is now approximately sixty-eight years old and has resided at this mental hospital since 1944. The facts, none of which are here in dispute, show that from 1968, when the mother died, until July 1975 all costs for her daughter's care were paid out of the trust fund created by Mrs. Baugh's will. The will, executed in 1957 and amended to a minor degree by codicils in 1961 and 1963, provides in pertinent part:

> *FIFTH:* I give, devise and bequeath all of the rest and residue of my estate, including all property over

which I have a power of testamentary disposition under any will of my husband, Frederick H. Baugh, unto my son, Frederick H. Baugh, Jr., and First National Bank of Baltimore, the survivor of them and their successors, as Trustees, IN TRUST AND CONFIDENCE, NEVERTHELESS, for the following uses and purposes:

A. My Trustees shall collect the rents, revenues, income and profits from my trust estate and after paying or providing for the payment of all taxes, dues, charges and expenses, shall dispose of the income and principal as follows:

1. My Trustees, accounting from the date of my death, shall pay from time to time the net income and so much of the principal as they, in their absolute and uncontrolled discretion, may determine, to my daughter, Annesley Bond Baugh, or, in their absolute and uncontrolled discretion, may apply the same for her maintenance, comfort and support.

2. Upon the death of my daughter my Trustees shall pay her funeral expenses unless her individual estate is sufficient to pay such expenses and shall transfer and deliver the balance of my trust estate then in their hands unto my son, Frederick H. Baugh, Jr., if he be then living. If my son should not be then living, my surviving Trustee shall retain the trust estate and pay the net income therefrom for the maintenance, education, comfort and support of his children living from time to time. When the youngest child of my son reaches the age of twenty-one (21) years, this trust shall terminate and cease and the surviving Trustee shall transfer and deliver the principal of the trust estate and all accumulated income thereon to the then living children and descendants of my son, per stirpes.

From 1968 until 1973, the income generated by the trust corpus proved to be sufficient to pay all costs of the daughter's care at the hospital and the trustees applied it to

that cause. The income, however, became insufficient in 1973 to discharge this obligation and from then until 1975 the trustees exercised the discretion granted them by the will and invaded the principal in order to pay the difference between the trust income and the hospital charges. Upon receipt in mid-July 1975 of a notice from the hospital of an additional increase in costs, the trustees decided that further invasion of the principal would not advance the testatrix's purposes in creating the trust and, as a consequence, notified the respondent that future payments would be limited to the trust income.[1] The Department of Health and Mental Hygiene, in contesting the trustees' construction of their responsibilities to Miss Baugh under the will, maintained the position that both the trust income and the principal, if need be, could be used in an appropriate amount to help defray the total cost of the daughter's care.

As a result of this conflict, a series of administrative appeals followed. When each resulted in a ruling adverse to the trustees, they sought judicial review by appealing to the Baltimore City Court. *See* Md. Code (1957, 1978 Repl. Vol., 1978 Supp.), Art. 41, § 206B; *id.* (1957, 1978 Repl. Vol.), Art. 41, § 255 (a). That court held that after all the income of Mrs. Baugh's trust had been utilized on her daughter's behalf, the corpus was, as an asset of the patient, then legally chargeable for the unpaid portion of the cost of the daughter's care assessed under Md. Code (1957, 1972 Repl. Vol., 1975 Cum. Supp.), Art. 59, § 40 (currently codified at Md. Code (1957, 1971 Repl. Vol., 1978 Cum. Supp.), Art. 43, § 601). From this order a timely appeal was taken by the trustees to the Court of Special Appeals and we granted certiorari prior to that court's consideration of the matter. Having concluded that the trustees acted within the authority granted them by the provisions of the trust in refusing to further deplete its principal, we will reverse.

The paramount issue now before us is whether the trust principal may be charged with the costs of the care of

---

1. It is undisputed that as of July 1975 the principal of the trust, having a value of approximately $100,000, generated an annual income of about $5200. while the yearly cost of care for Miss Baugh at the hospital was about $14,400.

Annesley Bond Baugh. The answer to this question, in turn, depends on which of two commonly recognized types of trusts the testatrix intended to create, that is, whether by the fifth item of her will she intended to establish a support trust or a discretionary trust.

A support trust, it is generally recognized, is one that provides that "the trustee shall pay or apply only so much of the income and principal or either as is necessary for the education or support of the beneficiary," thereby barring the beneficiary from transferring his interest and precluding his creditors from reaching it. Restatement (Second) of Trusts § 154 (1957); *accord,* G.G. Bogert & G.T. Bogert, *The Law of Trusts and Trustees* § 229, at 726 (2d ed. 1965); 2 A. Scott, *The Law of Trusts* § 154, at 1176 (3d ed. 1967). If this trust were entirely for the support of Miss Baugh, however, she could, by showing the trustees have abused their discretion, compel them to make any payment reasonably necessary for that purpose, *Offutt v. Offutt,* 204 Md. 101, 110, 102 A. 2d 554, 559 (1954) (quoting Restatement of Trusts § 128, Comment e (1935)); likewise, this Court has recognized that when a supplier of necessaries—the State in this case—has a claim against the beneficiary of a support trust, the interest of the beneficiary in the trust can be reached to compel payment for the required items or services. *Safe Deposit & Tr. Co. v. Robertson,* 192 Md. 653, 660, 65 A. 2d 292, 295 (1949) (quoting Restatement of Trusts § 157 (1935)); *see Pole v. Pietsch,* 61 Md. 570, 573-74 (1884).[2]

In contrast, if, by direction of the settlor, all or any part of the trust assets can be totally withheld from the beneficiary by the trustees then, to the extent it can be so retained, a discretionary trust would be created. The Restatement of Trusts, Second, sets forth the definition and incidents of a discretionary trust as follows:

[I]f by the terms of a trust it is provided that the trustee shall pay to or apply for a beneficiary only

2. Even though the State provides the beneficiary here with the necessities of life, because such care and support is not gratuitous, Whitworth, Adm'r v. Department, 222 Md. 98, 105, 158 A. 2d 765, 769 (1960), it cannot be considered an independent source of income to the beneficiary so as to relieve the trustees of any duty they may otherwise have to pay. *See* In re Gruber's Will, 122 N.Y.S.2d 654, 656-57 (Sur. Ct. 1953).

so much of the income and principal or either as the trustee in his uncontrolled discretion shall see fit to pay or apply, a transferee or creditor of the beneficiary cannot compel the trustee to pay any part of the income or principal. [Restatement (Second) of Trusts § 155(1) (1957).]

*Accord,* G.G. Bogert & G.T. Bogert, *supra,* § 228, at 717, 720-21; 2 A. Scott, *supra,* § 155, at 1180. Thus, payment cannot be compelled out of a discretionary trust unless it is shown that the trustees have acted arbitrarily, dishonestly, or from an improper motive in denying the beneficiary the funds sought. Restatement (Second) of Trusts § 128, Comment d (1957); *see Offutt v. Offutt, supra,* 204 Md. at 110, 102 A. 2d at 558.

Bearing in mind these trust classifications, we proceed to the task of ascertaining, from the four corners of the will, which form of trust the testatrix-settlor intended to create. *See, e.g., Johnson v. Hall,* 283 Md. 644, 649, 392 A. 2d 1103, 1106 (1978) (citing authorities); *Shriners Hospitals v. Md. Nat'l Bank,* 270 Md. 564, 570-71, 312 A. 2d 546, 550 (1973) (same). After reviewing the will and its codicils to determine Mrs. Baugh's intent, we think the critical passage indicating her desires and directions is found in paragraph one of the fifth clause which, because of its importance, we here set out again:

1. My Trustees, accounting from the date of my death, shall pay from time to time the net income and so much of the principal as they, in their absolute and uncontrolled discretion, may determine, to my daughter, Annesley Bond Baugh, or, in their absolute and uncontrolled discretion, may apply the same for her maintenance, comfort and support.

The respondent contends that the testatrix, by the use of these words, exhibited an intention to devote the principal of the trust fund to the maintenance, comfort, and support of her daughter, while the petitioners have consistently declared that the principal, as distinguished from the income, was not unreservedly devoted to the support of Annesley Bond Baugh

but is to be dispensed only as the trustees, in their absolute discretion, see fit.[3]

In examining the language of this paragraph as it deals with the trust corpus, we observe that it speaks of the distribution of the principal in two different contexts. It first declares: "My trustees ... shall pay ... so much of the principal as they, in their absolute and uncontrolled discretion, may determine, to my daughter Annesley Bond Baugh. . . ." Although this provision allows the trustees to pay any part of the principal to Miss Baugh for any reason, it also forecloses her right to compel such payments because any distribution rests solely within the trustees' discretion, if that discretion is honestly exercised. Thus, when considered alone, this language indicates the testatrix desired that the distribution of the principal be handled by the trustees under the rules and incidents applying to discretionary trusts. The application of this seemingly clearcut provision is somewhat muddled, however, by the testatrix's additional direction that her trustees "in their absolute and uncontrolled discretion, may apply the same for [my daughter's] maintenance, comfort and support." Respondent argues that by mixing language that traditionally connotes a discretionary trust with that often used to establish a support trust, the testatrix in this instance was qualifying her earlier grant of absolute discretion to her trustees and mandating that they act consistent with the more limited discretion connected with a trust for support when dealing with matters involving her daughter's maintenance.

Usually, if the purpose of the trust is to provide support, words to that effect are included in the clause directing the trustees to pay. For example, "the trustees shall pay to the

---

3. The disposition of the Baugh trust's income is not at issue here as the trustees have indicated that pursuant to the language of the above quoted paragraph directing them to "pay from time to time the net income . . . to my daughter," they will remit the income derived from the trust to the State for Miss Baugh's care. There is, of course, nothing to prevent a settlor from designating that his trustees exercise one measure of control over a trust's income and another type over the principal. *See* McNeal v. Bonnel, 412 S.W.2d 167, 170 (Mo. 1967) (although under terms of will income of corpus must be paid by trustees to beneficiary annually, corpus itself subject to discretionary trust).

beneficiary of this trust so much of the income or principal as they deem necessary for his maintenance, comfort, and support," is a fairly typical clause that clearly shows the testator's intent to create a support trust. Indeed, the testatrix in this instance included within part A of the fifth item a paragraph designated as "2", quoted earlier, that provides that after her daughter's death, if her son were also dead, "my surviving Trustee shall retain the trust estate and pay the net income therefrom for the maintenance, education, comfort and support of his children living from time to time." This is clearly a support clause for her grandchildren and, had the testatrix so desired, she could have provided for Miss Baugh's support with similar language. She did not do so, however, but instead qualified the language of support by adding words describing the discretion her trustees were to exercise as being "absolute and uncontrolled," an addition negating any suggestion that the testatrix wished to limit her trustees' power to deal with the principal in matters concerning her daughter's support and maintenance to the somewhat more restricted authority that is associated with a support trust. *See Town of Randolph v. Roberts,* 346 Mass. 578, 195 N.E.2d 72, 73-74 (1964); *McNeal v. Bonnel,* 412 S.W.2d 167, 170-71 (Mo. 1969); *In re Sullivan's Will,* 144 Neb. 36, 12 N.W.2d 148, 150-51 (1943); *Estate of Escher,* 94 Misc. 2d 952, 407 N.Y.S.2d 106, 109-11 (Sur. Ct. 1978); *cf. City of Bridgeport v. Reilly,* 133 Conn. 31, 47 A. 2d 865, 867-68 (1946). *But see In re Lackmann's Estate,* 156 Cal. App. 2d 674, 320 P. 2d 186, 189 (1958); *In re Estate of Browning,* 76 Misc. 2d 1041, 352 N.Y.S.2d 769, 770-71 (Sur. Ct. 1974); *Bureau of Support in Dept. of Ment. H. & C. v. Kreitzer,* 16 Ohio St. 2d 147, 243 N.E.2d 83, 85-86 (1968). Our conclusion, therefore, is that the trust, as it related to the principal, was not unqualifiedly for the support of Miss Baugh, but rather could be used for such a purpose at the sole discretion of the trustees.

In so stating, we are aware that this interpretation of paragraph one's language appears to deprive the second half of that paragraph of any independent meaning, because it does not seem to change or add to the trustees' power,

thereby contravening the constructional rule that "[a]ll of the language in [a trust instrument] should be given effect where possible." *Vickery v. Maryland Trust Co.,* 188 Md. 178, 188, 52 A. 2d 100, 105 (1947). Upon closer scrutiny, however, we think this is not the case. With regard to discretionary trusts, the Restatement, Second, points out:

> Unless a valid restraint on alienation has been imposed . . . , if the trustee pays to or applies for the beneficiary any part of the income or principal with knowledge of the transfer or after he has been served with process in a proceeding by a creditor to reach it, he is liable to such transferee or creditor. [Restatement (Second) of Trusts § 155 (2) (1957).]

In this case, the testatrix imposed a restraint on alienation, of the kind denoted above, in the fifth item of her will by stating that "[e]xcept as otherwise provided in this will, my Trustees shall pay all amounts of income and principal payable hereunder to any person into the hands of such person and not unto any other person or corporation whatsoever, . . . nor can any of said payments be anticipated." The effect of this spendthrift provision upon any discretionary payment of the principal, whether for support or some other purpose, would be to require that it be given directly to Miss Baugh and not to her creditors or assigns. By adding the latter provision of the first paragraph, however, we think testatrix was expressing her intention that the trustees could make discretionary payments for support from the principal directly to a creditor despite the spendthrift provision. Thus, our conclusion is that Mrs. Baugh, taking into account her daughter's mental condition, sought to insure her well-being by giving her the income from the trust and, in addition, sought to clothe her trustees with maximum flexibility to deal with the trust corpus so that they, in their absolute discretion, might make payments directly into the hands of her daughter or directly to creditors providing her daughter with necessary items or services.[4]

---

4. Likewise, we think that the testatrix's reference to the application of the "same" for her daughter's support gives the trustees license to ignore

Our determination that the testatrix created a discretionary trust, of course, precludes any argument that the trustees can be compelled to pay the principal of the trust for Miss Baugh's care at Spring Grove unless it can be shown that they acted "dishonestly or arbitrarily or from an improper motive." Restatement (Second) of Trusts § 128, Comment d (1957); *see Town of Randolph v. Roberts, supra,* 195 N.E.2d at 73 ("arbitrarily, capriciously, or in bad faith"). No such showing was made or even attempted to be made here. In a memorandum filed in the course of the trustees' appeal to the Baltimore City Court they declared:

> In declining to consume the corpus of the trust to meet the escalating costs for Miss Baugh's care at Spring Grove, the Trustees have given thoughtful consideration to Miss Baugh's age, her continuing and future needs in relation to the size of the trust estate, and the fact that the Trustees have been notified that Miss Baugh may be discharged from Spring Grove in the near future and require maintenance and support independent of a state facility.

We cannot say that they have misstated their reasons or that their decision was in any way capricious, dishonest, or improperly motivated. As such, the trust principal is not chargeable for the costs of Miss Baugh's care and the trustees cannot be compelled to invade it to defray those costs.

There remains for our consideration the question as to whether this action is defective because neither the life beneficiary nor the contingent remaindermen have been joined as parties. Since, generally speaking, if the construction of a will or trust instrument is requested in a suit for that purpose, or incident to another action, all those whose interest will be affected by the judgment should be named as parties, *see, e.g., McMahon v. St. Paul's Ref. Church,* 194 Md.

---

the spendthrift clause and, as they have heretofore done in paying the State for Miss Baugh's care at the hospital, deliver the income, not into the hands of Miss Baugh, but to those providing her with necessaries.

262, 268, 71 A. 2d 17, 20 (1950); *Noel v. Noel,* 173 Md. 152, 162, 195 A. 315, 320 (1937); E. Miller, *Equity Procedure* § 21, at 26-28 (1897), we, of our own accord, ordered reargument of this case with the specific direction that the issue of the adequacy of parties be addressed.

The reason for this general rule concerning parties was explained by Judge Parke in *Noel v. Noel,* when he observed for this Court:

> [I]n furtherance of a sound public policy, . . . [courts seek a judgment] which finally and completely determines, without a multiplicity of suits or circuity of procedure, the rights and interests which all parties have in the subject matter or object of the suit, in order that the parties may safely obey and act upon the [judgment]. Not only does a court . . . determine the questions involved, but through its [judgment] it completely arranges and enforces the rights and interests which the [judgment] immediately affects. [173 Md. at 162, 195 A. at 320 (citation omitted).]

Consequently, the *Noel* Court went on to explain:

> Where a person sues or defends . . . in a fiduciary capacity, the necessity of making the beneficiary a party depends upon whether or not there may exist any conflict of interest. As a general rule, the fiduciary represents the beneficiary in suits which relate to the fiducial relation, and it is unnecessary for the beneficiary to be joined as plaintiff or defendant, if there is no conflict of interest between the fiduciary and the beneficiary, nor among the beneficiaries themselves. If· the suit embrace the purpose to determine rights between the beneficiaries, or the fiduciary and the beneficiaries, it is necessary to bring in the beneficiaries as parties. Hence, where the fiduciary asserts a right or an interest in his personal capacity which, if established, would make him a beneficiary or create a right in diminution, conflict, or extinction of the

rights or interests of any beneficiary, the beneficiaries must be parties in a suit to ascertain and decree these rights or interests. [*Id.* at 162-63 [320] (citations omitted).]

Even though, as just noted, a trustee does not usually stand for his cestui que trust in a suit respecting trust property, so that both trustee and beneficiary are necessary parties in such an action, there are exceptions to this rule with the modern tendency being to extend the trustee's power to represent the beneficiaries.[5] G.G. Bogert & G.T. Bogert, *supra,* § 593, at 284 (2d ed. 1960). Based on our review of the authorities, both in this State and elsewhere, it would now appear that whether a trustee can adequately represent the cestui que trust in a particular action, or whether the latter is a necessary party, is dependent on the circumstances present in each case. That is, in light of the existing milieu and the decision to be made, is it the court's view that the cestui que trust should be before it to look after his own interest?

Considering first the contingent remaindermen-beneficiaries mentioned in the fifth clause of

---

5. One such exception in this State has been set out in Maryland Rule 205 b, which provides:

   b. *Trustee.*

   1. Representation of Beneficiary.

   In an action concerning real or personal estate, where the entire estate sought to be affected is vested in a trustee, under any instrument, with an immediate and unqualified power of sale, coupled with the right to give receipts, such trustee shall represent the person beneficially interested under the trust to the same extent as an executor or administrator in an action concerning personal estate represents the persons beneficially interested in such personal estate, and in such case it shall not be necessary to make the person beneficially interested under the trust a party to the action.

   2. Beneficiary May Be Made Party.

   Any party interested may, upon his application, be made a party to such action and the court may, upon consideration of the matter on the hearing, order such person to be made a party.

For other exceptions that are generally recognized throughout the country that permit a trustee to represent the cestui que trust so that notice to the former is binding on the latter see G.G. Bogert & G.T. Bogert, *The Law of Trusts and Trustees* § 593 (2d ed. 1960).

Mrs. Baugh's will, we conclude that although it would have been proper had they been joined, these beneficiaries were not necessary parties. In our view, this ruling logically follows from the early decision of this Court in *Darne v. Catlett,* 6 H. & J. 475 (1825). In *Catlett* a father made a bequest of $6000 to named executors with the direction to these fiduciaries that the interest thereon should be paid to his daughter during her life if, in the executors' opinion, the money was necessary for her decent support. Further, it was provided that upon the death of the daughter the principal and any accrued unexpended interest should be divided among any of the daughter's children who survived her. When the executors failed to pay the interest annually to the daughter she sued them and they defended on the ground that the plaintiff's children, as remaindermen, were necessary parties but had not been joined. After alluding to the principle that all persons interested in the subject of a suit, whether their interest be legal or beneficial, should be made parties, and recognizing that for practical convenience courts, including this one, had recognized many exceptions to that rule, our predecessors did not conceive that the case which was before them came within the scope of the general rule. Judge Archer reasoned for the Court:

> The mother applies to the court to compel the application of the interest to relieve her necessities. This application for relief is confined to the terms of the trust, and to that portion of the trust money to which she has an interest. The principal belonging to her children is not sought to be affected. It is true they have an interest in any balance of this fund, applicable to her use, which at her death may remain unexpended. *But the power conferred is entirely discretionary in the executors, and they are at liberty to apply the whole of it to the mother, if they deem it proper. Having this unlimited discretion reposed in them, it is believed that they could not be held accountable to the children. [Id.* at 483-84 (emphasis supplied).]

Accordingly, it was decided that the children were not necessary parties. *Accord, Safe Dep. & Tr. Co. v. Hutton,* 159 Md. 50, 65-67, 149 A. 689, 694-95 (1930) (citing *Catlett* and applying its rationale). In the case now before us the contingent beneficiaries, who it might be claimed are necessary parties, possess only a remote interest because, no matter whether the mother created a support or discretionary trust for her daughter, at a minimum, unlimited discretion is reposed in the trustees to pay all the principal to the life beneficiary and, consequently, under *Catlett* and *Hutton* they are not necessary parties to these proceedings.

A more difficult decisional problem exists with respect to whether the life beneficiary here is a necessary party. Although unquestionably it would have been more prudent had Miss Baugh been named by the State as a litigant, we conclude that under the somewhat unique facts present here she, likewise, is not a necessary party.

In considering this matter, we find the decision of our predecessors in *Cottman Co. v. Trust Co.,* 169 Md. 595, 182 A. 551 (1936), to be of considerable aid and supportive of this result. There, Cottman Company, a corporation engaged in the tugboat business, issued a number of ten-year convertible debentures. When, at maturity, the company could not pay the $43,000 then due, an extension was agreed to by the obligor, all the bondholders, and the original trustee appointed under the debenture agreement, with a mortgage being given on nine of the obligor's tugboats as additional security. Later, three of the tugs were damaged and the Cottman Company paid out of its funds the costs of their repair. When the Cottman Company's insurance carrier paid, as it was obligated to do, $4074.74 to the trustee for the damage to the boats, the tugboat company asked that this money be turned over to it. This request was refused and Cottman Company filed suit against the trustee. In its answer, the trustee submitted that, although knowing the identity of the several bondholders, the complainant did not name them as parties to the proceeding as required. In

determining that the bondholders were not necessary parties, this Court, speaking through Judge Mitchell, stated:

The common interest of all concerned, the bondholders, the trustee, and the tugboat company, was the successful operation of the business, the coincident value of the bonds, and their ultimate redemption. The question in litigation was a single one, the disposition of the insurance money; and there were but two courses open before the chancellor: To direct its transfer to the mortgagor, or to permit its retention by the trustee as additional security. The mortgagor and the trustee, respectively, represented these conflicting views, either of which could have been held by the bondholders, or a number of them. Whichever position they may have taken in the controversy was represented by one or the other of the actual parties to the suit. In this connection we quote from *Sweet v. Parker,* 22 N.J. Eq. 453, 455: "Many exceptions exist to the general rule that in equity all must be parties who have an interest in the object of the suit. The reason or principle of such exceptions is stated as follows in *Calvert on Parties,* sec. 2, p. 20; 'If they are required to be parties merely as the owners and protectors of a certain interest, then the proceedings may take place with an equal prospect of justice if that interest receives an effective protection from others. It is the interest which the court is considering, and the owner merely as the guardian of that interest; if, then, some other persons are present, who, with reference to that interest, are equally certain to bring forward the entire merits of the question, the object is satisfied for which the presence of the actual owner would be so required, and the court may, without putting any right in jeopardy, take its usual course and make a complete decree.' " [*Id.* at 606-07 [556].]

Thus, *Cottman Co.* stands for the principle that, when a seemingly necessary but unjoined party is only one of several owners or protectors of an interest that is the subject of litigation, if others are present before the court who effectively represent that interest then those parties, although normally indispensible, need not necessarily be joined, depending on the circumstances, in order to be bound by the judgment entered.[6] *Cf. Reyes v. Prince George's County,* 281 Md. 279, 282-301, 380 A. 2d 12, 14-24 (1977); E. Miller, *supra,* § 29, at 37.

As to this case, we observe that only the passage of time can definitively demonstrate which of the two possible answers to the single constructional issue being litigated here—whether the mother created a support trust or a discretionary trust for the benefit of her daughter—will prove to be the more advantageous to the life beneficiary. In theory, even though not likely, it could develop that Miss Baugh would benefit to a greater degree by an interpretation that concluded a support trust was intended because, in that event, the daughter would possess a greater right to insist that the trust principal be utilized for her support than would be true if a discretionary trust were created. Yet, no matter which of the alternative positions the life beneficiary would urge were she not a person under disability, each has been forcefully put forth by one or the other of the parties, both of whom are bona fidely seeking antagonistic results. Considering this, together with the fact that the purpose for which this suit was initially instituted concerns solely the interpretation of a written document as a matter of law, we think we are fully justified in reaching our already indicated conclusion that the life beneficiary here is not a necessary party.

---

6. The author of an American Law Reports annotation on trust beneficiaries as parties, in citing the case under the heading of "Mortgages and deeds to trustees securing numerous bonds or other obligations, generally," 9 A.L.R. 2d 10, 157 (1950), appears to suggest that this Court's holding in Cottman Co. v. Trust Co., 169 Md. 595, 182 A. 551 (1936), is applicable only to actions involving bonds or similar obligations; however, a reading of the case discloses no such limitation. *Accord,* Mason v. Mason, 366 S.W.2d 552, 555 (Tex. 1963) (citing *Cottman Co.* and applying its rationale in will contest proceedings).

Thus, even though we conclude the necessary parties were present to litigate this controversy, the determination of the Baltimore City Court as to the nature of the Baugh trust was in error and consequently must be reversed.

> *Judgment of the Baltimore City Court reversed.*
> *Costs to be paid by respondent.*