ETHEL CANTOR *v.* DEPARTMENT OF INCOME
MAINTENANCE ET AL.

SUPERIOR COURT      JUDICIAL DISTRICT OF      FILE NOS. 286528
HARTFORD-NEW BRITAIN AT HARTFORD      299890

Memorandum filed September 23, 1985

*William J. Luddy, Jr.,* for the plaintiff.

*Wendell S. Gates,* assistant attorney general, for the defendants.

SATTER, J. These are two appeals from decisions of the commissioner (commissioner) of the department of income maintenance (department) denying the plaintiff medical assistance payments under the title XIX medical assistance program, following a fair hearing held pursuant to General Statutes § 17-2b. The plaintiff appealed pursuant to General Statutes §§ 17-2b and 4-183, claiming that she is aggrieved as a result of those decisions and that the commissioner acted illegally,

unreasonably and arbitrarily in denying her benefits. Since the appeals present common questions of law and fact, they have been consolidated for trial and disposition by this court.

On September 28, 1981, the plaintiff, as settlor, executed a trust agreement in which the plaintiff's son and daughter were named trustees. Section 2 of the agreement makes the plaintiff a life income beneficiary. Sections 18 and 19 of the trust agreement designate the plaintiff's children, and ultimately the plaintiff's grandchildren, as the beneficiaries of the trust income and principal after her death. Section 3 provides that the trust corpus may be invaded in the discretion of the trustees if "any emergency arises in the affairs of any beneficiary by reason of sickness, accident or other unusual circumstances . . . ." Section 7 provides that the interest of any beneficiary in the "corpus or income of [the trust] shall not be subject to assignment, alienation, pledge, attachment, or claims of creditors, and shall not otherwise be voluntarily or involuntarily alienated or encumbered by any such beneficiary."

In February, 1982, the plaintiff became a patient at the Camelot Nursing Home in New London, and subsequently filed an application for title XIX benefits. At the time of the application, the trust assets consisted of the plaintiff's home in East Lyme, a limited partnership interest with a purchase price of $25,000, and approximately $14,000 in cash and securities.

On January 27, 1983, the plaintiff was denied benefits because of excess assets amounting to $39,000 (the partnership interest valued at $25,000, plus the $14,000 in cash and securities) in the trust fund. The maximum personal property resource level for a title XIX applicant is $850. Connecticut Department of Income Maintenance Manual, Vol. 3, Sup. D-2, index no. 244.1, p. 3. The plaintiff requested and was granted a fair hearing, pursuant to General Statutes § 17-2a.

On July 5, 1983, the commissioner issued his decision, in which he concluded that denial of the plaintiff's application due to excess assets was correct because the trust principal could be invaded for the plaintiff's benefit. This appeal followed in Docket No. 286528.

During the pendency of the plaintiff's application and the subsequent administrative rulings, the trust had loaned sums of money to the plaintiff to meet her bills at the nursing home. By October, 1983, all cash and liquid assets of the trust had been depleted, there remaining only the plaintiff's home.

On October 24, 1983, the plaintiff again applied for title XIX benefits, which were denied on the ground that the trust had excess assets, to wit, the plaintiff's house, which the department valued at $65,000. After a fair hearing, the commissioner affirmed the department's action. This second appeal followed in Docket No. 299890.

The right to appeal is purely statutory and is allowed only if the conditions fixed by statute are met. *Local 1303 & Local 1378* v. *FOIC*, 191 Conn. 173, 175, 463 A.2d 613 (1983). The plaintiff herein has taken this appeal pursuant to General Statutes § 4-183 which requires that a party taking such an appeal qualify as an "aggrieved party." The plaintiff has a specific personal and legal interest in the subject matter of the decisions appealed from and this interest has been specially and injuriously affected by the decisions to deny title XIX benefits. Id., 176. Accordingly, the court finds that the plaintiff is an aggrieved party within the meaning of § 4-183 (a).

In reviewing the merit of an administrative appeal, the court cannot substitute its discretion for that legally vested in the commissioner, but determines from the record whether there is a logical and rational basis for the decision of the commissioner or whether, in the light

of the evidence, he has acted illegally or in abuse of his discretion. General Statutes § 4-183 (g); *Board of Aldermen* v. *Bridgeport Antennae Television Co.,* 168 Conn. 294, 297, 362 A.2d 529 (1975). The court does not try the case de novo. *Board of Education* v. *Commission on Human Rights & Opportunities,* 176 Conn. 533, 538–39, 409 A.2d 1013 (1979).

Section 14 of the trust agreement provides that the trust "shall be construed and regulated according to the laws of the state of Maryland." Our courts respect the expressed will of the settlor as to the controlling law. *Stetson* v. *Morgan Guaranty Trust Co.,* 22 Conn. Sup. 158, 160, 164 A.2d 239 (1960), citing 1A G. Bogert, Trusts and Trustees § 211. Accordingly, the law to be applied to the trust agreement is the law of Maryland.

Section 3 of the agreement provides in pertinent part: "[I]f at any time while this Trust is in force any emergency arises in the affairs of any Beneficiary by reason of sickness, accident or other unusual circumstances, the Trust corpus may be used or applied, in the discretion of the Trustees, in such amount or amounts as may be required by or for the benefit of said Beneficiary by reason of such emergency."

The plaintiff is referred to in § 2 (a) of the agreement as a beneficiary.

It is undisputed that this is a discretionary trust. The plaintiff contends that under Maryland law, as expressed in *First National Bank* v. *Department of Health & Mental Hygiene,* 284 Md. 720, 399 A.2d 891 (1979), the trustees of a discretionary trust cannot be compelled by the state to exercise their discretion under a provision such as § 3 of the agreement therein. The plaintiff argues, therefore, that since a trustee of a discretionary trust has the power to withhold all or part of the trust assets from the beneficiary, the commis-

sioner was incorrect in holding that trust assets could be reached by her.

*First National Bank,* however, is not authoritative on the issue before this court. In that case the court, relying on § 155 (1) of the Restatement (Second) of Trusts, held that payment cannot be compelled out of a discretionary trust, unless it is shown that the trustees acted arbitrarily, dishonestly or for improper motives in denying the beneficiary the funds sought. *First National Bank* v. *Department of Health & Mental Hygiene,* supra, 725–26. The settlor of the trust in *First National Bank,* however, was not a beneficiary of the trust, as is the plaintiff here. This court can reasonably infer that, if this case were before the Maryland Court of Appeals, that court would apply § 156 of the Restatement (Second) of Trusts, entitled "Where the Settlor is a Beneficiary," which provides in part: "(2) Where a person creates for his own benefit a trust for support or a discretionary trust, his transferee or creditors can reach the maximum amount which the trustee under the terms of the trust could pay to him or apply for his benefit."

Comment (e) to that section of the Restatement provides: "Discretionary trust for the settlor. Where by the terms of the trust a trustee is to pay the settlor or apply for his benefit as much of the income or principal as the trustee may in his discretion determine, his transferee or creditors can reach the maximum amount which the trustee could pay to him or apply for his benefit."

The Restatement principle is adopted in *Greenwich Trust Co.* v. *Tyson,* 129 Conn. 211, 27 A.2d 166 (1942). In that case the Supreme Court held that where the settlor is the income beneficiary of a trust containing a spendthrift provision, income distributable to the beneficiary at the discretion of the trustee is subject to

claims of creditors. To hold otherwise, the court noted, "would open too wide an opportunity for a man to evade his just debts" and be contrary to state policy " 'that *all* the property of a debtor should be responsible for his debts. . . .' *D'Addario* v. *Abbot,* 128 Conn. 506, 509, 24 Atl. (2d) 245 [1941]." Id., 219.

The plaintiff places emphasis on *Zeoli* v. *Commissioner of Social Services,* 179 Conn. 83, 425 A.2d 553 (1979), which held that the state could not reach the assets of a spendthrift trust held for the benefit of two welfare recipients. However, her reliance on that case is misplaced because the trust in that case was created by will of the deceased testator and clearly the settlor was not also the beneficiary.

Thus with respect to the first appeal, Docket No. 286528, the commissioner correctly found that the plaintiff had excess assets and properly denied her medical assistance payments.

Following the depletion of the trust assets that were the subject of the first appeal, the plaintiff reapplied and was again denied title XIX benefits due to excess assets. The commissioner determined that since the plaintiff's home, valued at $65,000, had been transferred to the trust, and since trust assets were to be considered in determining the plaintiff's eligibility, she had excess assets and thus should be denied medical assistance payments.

The decision did not apply the homestead exemption created by Connecticut department of income maintenance manual, Vol. 3, Sup. D-2, index no. D-244.1, p. 2, which provides that "[r]eal property used as a home . . . will be excluded in the determination of the amount of resources owned by the applicant. . . ."

The fact that the home has been transferred to the trust, created by the plaintiff and for her life benefit,

does not vitiate the homestead exemption. Holding, as this court does, that transfer of the plaintiff's assets to the trust does not insulate them from reach of the creditor–state requires the court to hold also that transfer of the plaintiff's home to the trust does not preclude its being eligible for the homestead exemption.

The commissioner never determined whether the plaintiff's house was being used by her as a home, within the meaning of the department's regulation. This court cannot infer from the fact that the plaintiff has been in the Camelot Nursing Home since February, 1982, that she has abandoned the property as her home.

Thus, pursuant to § 4-183 (g) this court remands Docket No. 299890 to the commissioner for a determination of whether the plaintiff's real property should be excluded under the homestead exemption in determining her eligibility for medical assistance payments.

In summary, the appeal in Docket No. 286528 is dismissed and Docket No. 299890 is remanded, as aforesaid.