956 So.2d 666 (2007)
Renate KING, Plaintiff-Appellee
v.
SECRETARY, LOUISIANA DEPARTMENT OF HEALTH AND HOSPITALS, Defendant-Appellant.
No. 42,071-CA.
Court of Appeal of Louisiana, Second Circuit.
April 4, 2007.
Rehearing Denied May 3, 2007.
*667 Neal R. Elliott, Jr., Baton Rouge, for Appellant.
Pesnell Law Firm by W. Alan Pesnell, for Appellee.
Before BROWN, GASKINS and LOLLEY, JJ.
LOLLEY, J.
The Louisiana Department of Health and Hospitals ("LDHH") appeals a judgment from the Twenty-Sixth Judicial District Court, Parish of Bossier, State of Louisiana, which held that the state guidelines applicable to annuities were unenforceable, because they were more restrictive than federal guidelines. For the following reasons, we affirm.

FACTS
Renate King filed an application with the LDHH for Medicaid Long Term Care ("LTC") benefits on August 8, 2005. Mrs. King was denied LTC benefits on the basis of excess resources. Her countable resources included an annuity her husband, William King, acquired valued at $138,881.22. According to the LDHH, the annuity would be considered a non-countable resource if it had fulfilled Louisiana's requirement that Mr. King name the State of Louisiana as the residual beneficiary on the annuity. LDHH calculated Mrs. King's excess resources totaled $129,144.62 which far exceeded all resource limits.
Details of Mr. King's annuity
The commercial annuity at issue was paid with a single premium of $138,881.22 and lasted a period of two years, well within the life expectancy of Mr. King. The annuity paid a monthly amount of $5,792.14 to Mr. King providing a payback in excess of the amount paid for the annuity. The annuity was sold by Fidelity and Guaranty Life Insurance Company, in the State of Louisiana, and provides for no balloon payment. The annuity contract clearly contains a Medicaid Single Premium Immediate Annuity Waiver Endorsement setting forth that the annuity is non-transferable, non-assignable, totally and permanently irrevocable, and has no cash value. LDHH admits that the annuity is actuarily sound. The beneficiary of the annuity is the William D. King Estate.
Procedural History
LDHH notified Mrs. King that she was ineligible for LTC benefits by a notice dated October 18, 2005. Mrs. King requested a fair hearing on November 15, 2005. An administrative hearing was held regarding the ineligibility determination, and the administrative law judge ("ALJ") rendered a decision upholding the LDHH determination. Mrs. King filed a petition to review, and oral arguments were heard by the trial court on August 7, 2006. The trial court reversed the ALJ decision, and found Mrs. King eligible for LTC benefits. The trial court issued written reasons and stated that "Louisiana's requirement that a person name the state as a beneficiary on an annuity is unenforceable and cannot be used to deny benefits." It is from this ruling that the LDHH appeals.

LAW AND DISCUSSION
In the instant case, we must determine the legal soundness of Louisiana's requirement that an annuitant name the state as the residual beneficiary for the annuity in order to be designated as a non-countable resource at the time of Mrs. King's application. This requirement is commonly referred to as a "state-payback" *668 provision. Mrs. King argues that as a result of the "state-payback" provision, the Louisiana medicaid eligibility methods are unlawfully more restrictive and do not comport with the preemptive federal guidelines.
Medicaid and Applicable Provisions
Congress enacted Title XIX of the Social Security Act, or the Medicaid Act, in 1965, establishing a cooperative federal-state program in which the federal government reimburses states for a portion of the cost of medical care for needy persons. 42 U.S.C. § 1396 et seq.; Schweiker v. Gray Panthers, 453 U.S. 34, 101 S.Ct. 2633, 69 L.Ed.2d 460 (1981). State participation in the program is voluntary, but states choosing to participate must comply with the federal statute's requirements. Harris v. McRae, 448 U.S. 297, 100 S.Ct. 2671, 65 L.Ed.2d 784 (1980). The test for Medicaid eligibility is essentially a needs-based test, with coverage being denied if the applicant exceeds a ceiling in countable resources. The Medicare Catastrophic Coverage Act of 1998 ("MCCA"), 42 U.S.C. § 1396r-5, amended the Medicaid Act to establish a mechanism to protect couples from being forced to deplete their assets to qualify for Medicaid.
The MCCA established impoverishment provisions by which a portion of a couple's resources are protected and not considered available to pay for nursing care expenses. In determining eligibility, the community spouse resource allowance ("CSRA") is not considered available to the institutionalized spouse, but all resources above the CSRA must be spent for that spouse in order for that spouse to be eligible. The CSRA is determined by calculating the total of all of the couple's resources, whether jointly or separately owned, as of the time a spouse is institutionalized. Half of that total is then allocated to each spouse. Wisconsin Dept. of Health and Family Services v. Blumer, 534 U.S. 473, 122 S.Ct. 962, 151 L.Ed.2d 935 (2002). At the time of Mrs. King's application, the CSRA was in the amount of $95,100.00 and the allowable resource limit was $2,000.00.
In the instant case, a relevant provision in the MCCA is 42 U.S.C. § 1396r-5(b)(1) which states, "During any month in which an institutionalized spouse is in the institution . . . no income of the community spouse shall be deemed available to the institutionalized spouse." However, more stringent requirements were put in place to restrict the ability of individuals to shelter resources in order to qualify for Medicaid as part of the Omnibus Budget Reconciliation Act of 1993. 42 U.S.C. § 1396p.
Louisiana, through the LDHH, created a Medicaid Eligibility Manual ("MEM") giving effect to the federal statutes that establish our state standards for Medicaid benefits, including eligibility for LTC nursing facilities. MEM §§ B-100, B-300. Eligibility for LTC vendor payments is specifically based on the applicant's need, calculated on the applicant's resources, including income and certain property. MEM § H-831.4.
Applicable definitions
The term "resource" is defined in the Social Security regulations, 20 C.F.R. § 416.1201(a), and states:
For purposes of this subpart L, resources means cash or other liquid assets[1] or any real or personal property *669 that an individual (or spouse, if any) owns and could convert to cash to be used for his or her support and maintenance.
As a general rule, a revocable trust is a resource for purposes of Medicaid eligibility, and an irrevocable trust is not a resource. See Smith v. Secretary, Louisiana Dept. of Health and Hospitals, 39,368 (La.App. 2d Cir.03/02/05), 895 So.2d 735; 42 U.S.C. § 1396p(d). A "`trust' includes any legal instrument or device that is similar to a trust, but includes an annuity only to such extent and in such manner as the Secretary of the Department of Human Services specifies." (Emphasis added.) 42 U.S.C. § 1396p(d)(6).
Congress delegated broad authority to the Center of Medicare and Medicaid Services ("CMS"), through the Secretary of the Department of Health and Human Services, to define eligibility requirements for Medicaid consistent with the statutory scheme and the reasonable exercise of the delegated power. Schweiker, supra; State of La. v. United States Dept. of Health and Human Services, 905 F.2d 877 (5th Cir.1990). The CMS has a manual ("CMS manual") which sets forth the directives of the Secretary of the Department of Health and Human Services. Pursuant to the power delegated to CMS, annuities are defined in the CMS manual which states:
The annuity may or may not include a remainder clause under which, if the annuitant dies, the contracting entity converts whatever is remaining in the annuity into a lump sum and pays it to a designated beneficiary.
Annuities, although usually purchased in order to provide a source of income for retirement, are occasionally used to shelter assets so that individuals purchasing them can become eligible for Medicaid. In order to avoid penalizing annuities validly purchased as part of a retirement plan but to capture those annuities which abusively shelter assets, a determination must be made with regard to the ultimate purpose of the annuity (i.e., whether the purchase of the annuity constitutes a transfer of assets for less than fair market value). If the expected return on the annuity is commensurate with a reasonable estimate of the life expectancy of the beneficiary, the annuity can be deemed actuarially sound.
. . . If the individual is not reasonably expected to live longer than the guarantee period of the annuity, the individual will not receive fair value for the annuity based on the projected return. In this case, the annuity is not actuarially sound and a transfer of assets for less than fair market value has taken place, subjecting the individual to a penalty.
At issue in this case is whether, at the time of Mrs. King's application, MEM I-1634.2 as promulgated, was enforceable in light of the federal guidelines. Louisiana's MEM I-1634.2 specifically states:
For Medicaid eligibility purposes an annuity is considered a legal instrument or device similar to a trust. An annuity is defined as a contract or agreement by which one receives fixed non variable payments on an investment for a lifetime or a specified number of years. An annuity containing a balloon payment will be considered an available resource. An annuity purchased by or for an individual using that individual's assets will be considered an available resource unless *670 all of the following criteria are met.

The annuity:
1. is irrevocable;
2. pays out principal and interest in equal monthly installments (no balloon payment) to the individual in sufficient amounts that the principal is paid out within the actuarial life expectancy of the annuitant; and,
3. names the State of Louisiana, Department of Health and Hospitals or its successor agency as the primary and permanent residual beneficiary of funds remaining in the annuity, not to exceed any Medicaid funds expended on the individual during his lifetime; and,

4. is issued by an insurer or other body licensed and approved to do business in the jurisdiction in which the annuity is established.
Annuities which do not meet all of the above criteria must be amended to comply with these requirements. Annuities which do not provide for pay out of principal and interest in equal monthly installments and for which documentation is received from the issuing company that the "pay out" arrangement cannot be changed, will be considered to meet the new requirements once amended to name the State of Louisiana, Department of Health and Hospitals or its successor agency as the primary and permanent residual beneficiary of funds remaining in the annuity, not to exceed any Medicaid funds expended on the individual during his lifetime.
(Emphasis added).
LDHH believes it followed the rulemaking procedure necessary to promulgate the state's treatment of annuities. Specifically, LDHH points out that they obtained the required approval from CMS, allowing implementation of the requirement at issue. LDHH also makes much of the correspondence between a CMS employee and the Kings' annuity representative who had inquired into the validity of MEM I-1634.2. The CMS response, not surprisingly, stated "first, let me assure you that Louisiana's plan amendment fully comports with federal statutes and regulations, which is why it was approved by CMS." Mrs. King, on the other hand, points to the CMS manual and other federal statutes which allow annuities, such as Mr. King's annuity, to be a non-countable resource without the "state-payback" provision. Thus, Mrs. King argues, this more restrictive state imposed language is unenforceable.
Standard of Review
As explained in our prior decision, Cox v. Secretary, Louisiana Dept. of Health and Hospitals, 41,391 (La.App. 2d Cir.08/25/06), 939 So.2d 550, when reviewing an administrative final decision in an adjudication proceeding, the trial court functions as an appellate court. Once a final judgment is rendered by the trial court, an aggrieved party may seek review of same by appeal to the appropriate appellate court. On review of the trial court's judgment, no deference is owed by the court of appeal to the factual findings or legal conclusions of the trial court, just as no deference is owed by the Louisiana Supreme Court to factual findings or legal conclusions of the court of appeal. Thus, an appellate court sitting in review of an administrative agency reviews the findings and decision of the administrative agency and not the decision of the trial court.
The applicable standard of review is set forth in La. R.S. 49:964. Sub-section F of La. R.S. 49:964 provides that a reviewing court is confined to the record established before the agency (except in cases of alleged irregularity in procedure before the *671 agency). A reviewing court's function is not to weigh de novo the available evidence and to substitute its judgment for that of the agency. Nevertheless, the trial court and the court of appeal have the authority to reverse or modify the decision of the agency if substantial rights of the party seeking review have been prejudiced because the administrative findings, inferences, conclusions, or decisions are: (1) in violation of constitutional or statutory provisions; (2) in excess of the agency's statutory authority; (3) made upon unlawful procedures; (4) affected by other error of law; (5) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or (6) manifestly erroneous in view of the reliable, probative and substantial evidence in the record.
It is well established that generally state regulations that are inconsistent with federal law are invalid under the Supremacy Clause. U.S.C.A. Const. Art. 6, cl. 2. Also, it is generally held that the Supremacy Clause applies to the regulatory scheme promulgated under the Medicaid act. See Frazar v. Gilbert, 300 F.3d 530 (5th Cir. 2002)[2]; Missouri Child Care Ass'n v. Cross, 294 F.3d 1034 (8th Cir.2002); Antrican v. Odom, 290 F.3d 178 (4th Cir.2002), cert. denied, 537 U.S. 973, 123 S.Ct. 467, 154 L.Ed.2d 329 (2002). Although the narrow issue before us today is a matter of first impression for Louisiana, in the past we have found a denial of Medicaid benefits improper when based on a transfer of an annuity by an institutionalized spouse to a community spouse for her sole benefit. See Pacente v. Jindal, 99-0601 (La.App. 4th Cir. 12/29/99), 751 So.2d 343. However, case law in other states directly address annuities, the "state-payback" provision, and eligibility for Medicaid benefits and provide ample guidance.
In Mertz v. Houstoun, 155 F.Supp.2d 415, 427 (E.D.Pa.2001), where a Medicaid applicant sought a declaratory judgment that the denial of her application for benefits violated the Medicaid Act, the court recognized that:
[A] couple may effectively convert countable resources into income of the community spouse which is not countable in determining Medicaid eligibility for the institutionalized spouse by purchasing an irrevocable actuarially sound commercial annuity for the sole benefit of the community spouse. It is a loophole apparently discerned by lawyers and exploited by issuers who advertise such annuities as a means to qualify for Medicaid benefits. . . . It is not the role of the court to compensate for an apparent legislative oversight by effectively rewriting a law to comport with one of the perceived or presumed purposes motivating its enactment. It is for the Congress to determine if and how this loophole should be closed.
In James v. Richman, No. Civ. A. 3:05-2647, 2006 WL 1169703 (M.D.Pa. Mar.20, 2006), an institutionalized spouse was denied Medicaid benefits on the ground that an annuity purchased by a community spouse was an available resource to be counted in determining institutionalized spouse medicaid eligibility. Pennsylvania, like Louisiana, passed legislation which addressed irrevocable annuities and added restrictions including, "an annuity will not be considered an available resource if the annuity names the Department as the residual beneficiary of any funds remaining due under the annuity at the time of death of the annuitant, not to exceed the amount of Medical Assistance expended on the individual during his or her lifetime." The James court opined, "the federal law is *672 clear on the subject, and any change in federal law is a matter for Congress. The annuity such as the one present here is permitted and there can be no penalty." Id. at 4.
The most analogous case to the instant matter is A.B. v. Division of Medical Assistance and Health Services, 374 N.J.Super. 460, 865 A.2d 701 (2005), where a Medicaid applicant was denied Medicaid benefits due to her husband's refusal to name the state as a remainder beneficiary on an annuity. In that case, as in here, the husband purchased a commercial annuity to provide him with an income stream. In A.B., the couple's daughter was designated as the remainder beneficiary. There, the court concluded that:
[S]ince the Federal Medicaid Act prohibits the State from treating an actuarially sound commercial annuity as an available resource of the community spouse, the State may not require that it be named as the remainder beneficiary of such an annuity. The State cannot implement such a requirement either as an informal policy or as a regulation.
Id. at 468, 865 A.2d 701.
We agree. The Louisiana "state-payback" provision is inconsistent with the federal Medicaid Act and the directives of the Secretary of Health and Hospitals. Therefore, it is unenforceable. Of notable interest is that LDHH explains, in brief and at oral arguments, that Louisiana's Medicaid Director was consulted in the drafting of the annuity provisions for the federal Deficit Reduction Act of 2005.[3] This, in effect, is an admission that Louisiana's MEM I-1634.2 annuity policy did not comport with federal statutory guidelines prior to the Deficit Reduction Act of 2005, and therefore was more restrictive.
No doubt the state was frustrated with the practice of what could be perceived as sheltering assets; indeed, it seems to be inconsistent with the intent of the Medicaid program which is to provide assistance to those truly in need. However, here the state has gone beyond the scope of the cooperative federal-state program and hastily implemented a guideline that did not comply with the applicable preemptive federal statutes. After a thorough analysis of the record and applicable law, we find LDHH's reliance on CMS approval for the validity of the "state-payback" provision misplaced. Accordingly, the record is clear that but for the annuity Mrs. King was entitled to LTC benefits.

CONCLUSION
For the reasons set forth above, we affirm the trial court's judgment finding that the "state-payback" provision, at the time of Renate King's application, was unenforceable and that Renate King is eligible for Long Term Care Medicaid benefits.
AFFIRMED.
APPLICATION FOR REHEARING
Before BROWN, GASKINS, DREW, MOORE and LOLLEY, JJ.
Rehearing denied.
NOTES
[1] The term "liquid resources" is defined in the regulations as:

. . . cash or other property which can be converted to cash within 20 days, excluding certain nonwork days as explained in § 416.120(d). Examples of resources that are ordinarily liquid are stocks, bonds, mutual fund shares, promissory notes, mortgages, life insurance policies, financial institution accounts (including savings, checking, and time deposits, also known as certificates of deposit) and similar items. 20 C.F.R. § 416.1201(b).
[2] Reversed on other grounds.
[3] With the federal Deficit Reduction Act of 2005, effective February 8, 2006, Congress enacted legislation that now requires annuities to name the participating state as the residual beneficiary. The statute was not in effect at the time of Mrs. King's application.