**TOWN OF RICHMOND**

v.

**RHODE ISLAND DEPARTMENT OF ENVIRONMENTAL MANAGEMENT et al.**

No. 2005–343–Appeal.

Supreme Court of Rhode Island.

Jan. 25, 2008.

Laura J. Bottaro, Esq., Providence, for Plaintiff.

Gerald J. Petros, Esq., Providence, for Defendant.

Present: WILLIAMS, C.J., GOLDBERG, FLAHERTY, SUTTELL, and ROBINSON, JJ.

## OPINION

Justice GOLDBERG, for the Court.

This case came before the Supreme Court on October 30, 2007, on separate appeals by the defendant, Rhode Island Department of Environmental Management (DEM), and the defendant-intervenor, Charbert, Division of NFA Corporation (Charbert[1] and collectively defendants), from a Superior Court judgment entered in favor of the plaintiff, the Town of Richmond (Richmond or the town). For the reasons stated herein, we vacate the judgment of the Superior Court.

---

1. The subject property is owned by Alton Realty Corporation (Alton) and includes a textile manufacturing facility. Charbert, Inc. was the prior owner. Charbert purchased the property in 1962 and transferred it to Alton in 1991. The textile manufacturing facility is operated by NFA Corporation. Charbert, Inc. and Alton Operating Corporation were prior operators of the textile manufacturing facility.

Charbert has announced that it will close its textile manufacturing facility in Richmond "by approximately February 2008;" however, on November 6, 2007, Charbert informed the Court that "this closure does not moot the appeal because Charbert will continue to complete its obligations under the Consent Agreement * * *."

## Facts and Travel

During the relevant period in this case, Charbert operated a textile manufacturing and fabric-dyeing business in a facility in the Town of Richmond. On August 13, 2004, DEM served Charbert with a Notice of Violation (NOV), which alleged that Charbert had violated various statutes and administrative regulations under DEM's jurisdiction. The NOV ordered Charbert to perform remediation of the property to comply with the applicable statutes and regulations and to pay an administrative penalty of $9,500.

On September 3, 2004, Charbert requested a hearing with the chief hearing officer (hearing officer) of DEM's Administrative Adjudication Division (AAD). Richmond filed a petition to intervene, to which DEM did not object; but Charbert did.[2] The town argued that in past instances DEM had failed to protect the interests of the town such that intervention in the proceeding was necessary. The petition was granted by the AAD hearing officer on March 17, 2004,[3] with the caveat that jurisdiction was limited to the appeal of the NOV. The hearing officer found that Richmond had demonstrated an injury in fact and that its interests were not adequately represented by the parties to the proceeding.

Richmond then issued discovery requests to Charbert and DEM, with which neither party complied; thereafter, the town moved to compel both the production of documents and answers to its interrogatories. The record discloses that Richmond, through communications with counsel for DEM, endeavored to make known its interests concerning the NOV. While the motions to compel discovery were pending, defendants negotiated a resolution of the NOV that was embodied in a proposed consent agreement. The town received a draft copy of the consent agreement on June 29, 2005—the same day that Charbert signed the final version.[4] On July 7, 2005, Richmond filed an objection to the consent agreement with the hearing officer, but Charbert withdrew its request for a hearing on the NOV on July 11, 2005. The AAD proceedings were closed, and the hearing on Richmond's motions to compel discovery and interrogatories was canceled.

Meanwhile, on July 22, 2005, Richmond filed a complaint against DEM in Superior Court requesting: (1) judicial review of DEM's administrative action under the Administrative Procedures Act (APA); and (2) declaratory relief under the Uniform Declaratory Judgments Act (UDJA), alleging that the AAD proceedings were terminated improperly and that the consent agreement was null and void.

The complaint alleged that for many years Charbert owned and operated a textile mill in Richmond, from which various industrial chemicals and hazardous substances were discharged, resulting in contamination of the soil and groundwater. The town further alleged that Charbert had allowed industrial chemicals and hazardous materials to escape into the air, causing noxious odors. Richmond alleged that the contamination posed a serious threat to the environment and to the health, safety, and welfare of the town's residents. The town also asserted that

2. DEM and Charbert did object to the supplemental memorandum that Richmond filed to amend the NOV; however, that issue was not addressed by the hearing officer, who ordered Richmond to file a separate motion.

3. The administrative order was entered on March 24, 2005.

4. The consent agreement became effective upon execution by DEM on July 5, 2005.

DEM's enforcement efforts, whether to remediate harm caused by past violations or prevent future violations, had been ineffective. Charbert thereafter filed a motion to intervene in the case, which motion was granted on August 31, 2005.

Before the Superior Court, Richmond argued that, as an intervenor in the enforcement proceeding, the town had certain rights and should have been afforded the opportunity to approve the settlement or demonstrate to the hearing officer that the terms of the consent decree were inappropriate.

Both DEM and Charbert argued that intervention in an administrative enforcement action is different from intervention under the Superior Court Rules of Civil Procedure. Charbert also argued that Richmond's complaint was grounded on the town's erroneous belief that it could assert its own claims in the context of a DEM enforcement action. Charbert contended that because it was the only entity that could request a hearing on the NOV, only Charbert and DEM could reach a settlement of those claims; Charbert further contended that once it withdrew its request for a hearing, the town had no independent right to demand that the hearing proceed. The defendants also raised a jurisdictional defense in the Superior Court and argued that the complaint should be treated as an APA appeal and not as a declaratory judgment action.

The trial justice found that as an intervenor, Richmond was a full party to the proceeding with all the procedural rights that other parties enjoy, including the right to notice and the right to be heard. He declared that the hearing officer could not exclude a party once it became an intervenor without first having a hearing.

Additionally, the trial justice found that, if negotiations lead to a consent disposition, the hearing officer must determine whether all parties agree with the proposed consent order and that no party can be forced to stipulate to a settlement. The trial justice also held that, if all parties do not agree, then the hearing officer must decide whether the consent order will stand. Further, the trial justice declared that the hearing officer could reject the agreement and schedule a hearing on the merits, even if all three parties agreed to the consent order.

Significantly, the trial justice found that, having been granted intervenor status, the town became a full party to the enforcement proceedings. The trial justice also held that one party cannot be excluded from the final resolution of the dispute; and, since Richmond did not participate in the process, the proceeding at the hearing level became "unlawful and a nullity." The trial justice ordered that the consent agreement be set aside and that the matter proceed to a hearing with Richmond's participation.

In addressing the jurisdictional issue, the trial justice concluded that he was vested with jurisdiction to grant the relief sought under both the APA and the UDJA. An order and final judgment was entered on November 18, 2005, *nunc pro tunc* to November 4, 2005.[5] The judgment declared that the relief sought by the town was granted under the declaratory judgment count of the complaint, and therefore no further action had to be taken with respect to the administrative appeal.

The case was remanded to the AAD for further proceedings. Charbert filed a notice of appeal on November 15, 2005, and

---

**5.** The original order and final judgment that was entered on November 4, 2005, was lost or misplaced.

DEM filed a notice of appeal on December 2, 2005.

## Standard of Review

■ This Court frequently has held that the trial justice has discretion whether to grant or to deny declaratory relief under the UDJA. *Sullivan v. Chafee*, 703 A.2d 748, 751 (R.I.1997) (citing *Woonsocket Teachers' Guild Local Union 951, AFT v. Woonsocket School Committee*, 694 A.2d 727, 729 (R.I.1997) and *Lombardi v. Goodyear Loan Co.*, 549 A.2d 1025, 1027 (R.I. 1988)). However, the discretion granted to the trial justice "is not absolute and is subject to appropriate appellate review." *Id.* (citing *State v. Cianci*, 496 A.2d 139, 146 (R.I.1985)). The decision of the trial justice will not be disturbed unless there is an abuse of discretion or the decision clearly was erroneous. *Id.* (citing *Woonsocket Teachers' Guild Local Union 951, AFT*, 694 A.2d at 729). Accordingly, this Court reviews a declaratory judgment to determine "whether the court abused its discretion, misinterpreted the applicable law, overlooked material facts, or otherwise exceeded its authority." *Id.*

## Exhaustion

■ Before this Court, defendants argue that the trial justice improperly interfered with the statutory authority of the director of DEM to resolve enforcement actions, resulting in a finding that the intervenor may exercise veto power over a negotiated resolution of a NOV. Additionally, defendants argue that the trial justice erroneously treated an informal resolution by the parties as a formal consent order under DEM's rules. The defendants also contend that the trial justice ignored the town's failure to seek review under the APA, which failure in defendants' view deprived the Superior Court of subject-matter jurisdiction.

We first shall address the contradictory arguments set forth by each defendant concerning the trial court's jurisdiction over the issues in this case. Charbert contends that the trial court lacked subject-matter jurisdiction under the APA because Charbert was the only party that requested a hearing and that, after Charbert withdrew its request for a hearing, there was no final agency order and nothing that could be reviewed by the Superior Court in accordance with G.L.1956 § 42–35–15.

The DEM, on the other hand, argues that § 42–35–15 was the vehicle by which Richmond could seek judicial review, and the trial justice "erred as a matter of law" when he accepted jurisdiction under both the APA and the UDJA. According to DEM, these statutory vehicles for judicial relief "are wholly incompatible," both procedurally and substantively. The DEM contends that once an administrative action becomes a contested case, judicial review must be sought under the APA, but that, as an intervenor, Richmond only was "arguably entitled to judicial review" in accordance with § 42–35–15. Additionally, DEM contends that the trial justice erroneously concluded that the court was vested with jurisdiction under both statutes, thereby countenancing an "end-run" around the APA. We disagree.

The record discloses that the trial justice based his decision on § 42–35–7, which allows a party to seek a declaratory judgment on "[t]he validity or applicability of any [agency] rule * * * when it is alleged that the rule, or its threatened application, interferes with or impairs, or threatens to interfere with or impair, the legal rights or privileges of the plaintiff." In his decision, the trial justice found that Richmond was entitled to seek declaratory relief under § 42–35–7 because the town was granted intervenor status in the hearings in accor-

dance with DEM's administrative rules but was denied meaningful participation in its resolution.

■ Although exhaustion of administrative remedies is a mandatory condition precedent to judicial review under § 42–35–15, this Court has recognized that in certain instances a party may seek declaratory relief in the Superior Court. Such circumstances generally arise in the context of a rule or practice of the agency that is challenged as unconstitutional or in excess of the agency's statutory authority. In *Arnold v. Lebel*, 941 A.2d 813 (R.I. 2007), this Court held that an applicant who was denied medical assistance benefits could mount a prehearing challenge to the agency's practice of engaging in *ex parte* discussions with agency personnel. *Id.* at 818–19. We declared that the plaintiffs in that case could seek a declaration that the practice of *ex parte* consultations exceeded the agency's authority under the APA. *Id.*

Moreover, we previously have recognized that the validity or applicability of an agency rule or practice may be decided in an action for declaratory relief, notwithstanding the fact that an administrative hearing was requested. *See Newbay Corp. v. Annarummo*, 587 A.2d 63, 65–66 (R.I.1991) (ruling that, if the adoption or application of an agency rule or practice interferes with or threatens to impair the rights or privileges of a party, a declaratory judgment is available pursuant to § 42–35–7). Accordingly, we are satisfied that the trial justice appropriately was vested with jurisdiction to decide this case. Further, as Charbert argued, there was no final agency decision in this case and,

therefore, nothing for the trial justice to review on a nonexistent record. The argument by DEM that Richmond's right to relief was confined to the provisions of § 42–35–15 is bewildering; we are hard-pressed to fathom just what DEM would have the Superior Court review.

Finally, § 42–35–15(a) specifically provides that "utilization of or the scope of judicial review available under other means of review, redress, relief, or trial de novo provided by law" is not precluded by its provisions. Because resolution of the issue presented in this case requires the Court to examine two sets of rules promulgated by DEM (*viz.*, the Administrative Rules of Practice and Procedure for the Administrative Adjudication Division for Environmental Matters (AAD Rules) and the DEM Rules and Regulations for Assessment of Administrative Penalties (AAP Rules)), this trial justice properly was vested with jurisdiction to render a declaratory judgment. However, we conclude that his decision was erroneous.

## Analysis

The AAD Rules permit an intervenor to become a full party to the hearing [6] but also provide that only the petitioner has the right to withdraw a request for a hearing, which is deemed a withdrawal with prejudice.[7] A petitioner is defined as "[a]n individual or legal entity(ies) who initiates an Adjudicatory Proceeding." AAD Rule 2.00(c)(15). Thus, in accordance with the AAD Rules, Charbert, as the petitioner, could initiate a hearing but could also withdraw its request at any time. In contrast, because the AAP Rules do not give an intervenor the right to a hearing, Charbert's withdrawal of its request for a hear-

---

**6.** Rule 13.00(d) of the Administrative Rules of Practice and Procedure for the Administrative Adjudication Division for Environmental Matters (AAD Rules).

**7.** AAD Rule 9.00.

ing on the NOV effectively ended the proceeding before the AAD.

Additionally, the AAP Rules vest the director with broad authority to determine which administrative and judicial enforcement actions to pursue and what allegations to raise in the NOV.[8] Moreover, the director is statutorily authorized "in his or her discretion to resolve contested licensing and enforcement proceedings through informal disposition pursuant to regulations promulgated by the director." G.L. 1956 § 42–17.7–2. Although the AAP Rules provide for resolution by the director before a hearing, AAP Rule § 11(f) also explicitly provides that "[n]othing herein shall preclude the Director from resolving the outstanding penalty through a Consent Agreement at any time he or she deems appropriate." The APA also provides that "[u]nless precluded by law, informal disposition may be made of any contested case by stipulation, agreed settlement, consent order, or default."[9] Section 42–35–9(d). Therefore, the director was authorized to enter into a consent agreement without seeking any input from the intervenor. Thus, the intervenor may not control the result.

Lastly, we note that the AAD Rules provide for the hearing officer to review proposed consent orders, but that the AAD Rules "shall not preclude settlement of the proceedings in any other manner." AAD Rule 17.00(c). Therefore, the director may decide to enter into a consent agreement that is final with or without the approval of the hearing officer.

In this case, the director approved a consent agreement that became effective and binding upon the parties to that agreement (DEM and Charbert), and Charbert then elected to withdraw its request for a hearing. This terminated the administrative proceeding. Richmond was not a party to the consent agreement, nor bound by its terms. The town, as it was entitled to do, filed a separate lawsuit against Charbert in Superior Court. The town could not, however, force Charbert to continue with the hearing before the AAD. Although the settlement between Charbert and DEM effectively terminated the administrative proceeding, it did not affect the rights of the town to seek redress against Charbert; a course it has elected to pursue.

■ We are mindful that the director is charged with enforcing the environmental laws and regulations of this state and should be accorded the discretion to settle contested actions. This Court long has recognized that "an administrative agency will be accorded great deference in interpreting a statute whose administration and enforcement have been entrusted to the agency." *Murray v. McWalters*, 868 A.2d 659, 662 (R.I.2005) (quoting *In re Lallo*, 768 A.2d 921, 926 (R.I.2001)). An administrative agency may develop informal disposition procedures that do not require a formal hearing process for resolution. Accordingly, we decline to hold that the Superior Court Rules of Civil Procedure automatically apply to an administrative

---

8. Rule § 7(b) of the DEM Rules and Regulations for Assessment of Administrative Penalties (AAP Rules).

9. We note that the *Model State Administrative Procedure Acts* encourages informal settlement:

"Except to the extent precluded by another provision of law, informal settlement of matters that may make unnecessary more

elaborate proceedings under this Act is encouraged. Agencies shall establish by rule specific procedures to facilitate informal settlement of matters. This section does not require any party or other person to settle a matter pursuant to informal procedures." *Model State Administrative Procedure Acts*, 15 U.L.A. § 1–106 at 18 (2000).

hearing; we defer to the General Assembly to determine whether, and in what circumstances, an agency may negotiate an informal disposition of a matter within its jurisdiction.

■ We are confident that the General Assembly did not envision an administrative proceeding in which a non-party intervenor with divergent interests from DEM's could control the outcome in favor of its own interests over those of the agency responsible for enforcing the state's environmental laws. Nor are we persuaded that a respondent should be compelled to participate in an administrative hearing after a settlement has been reached between the principal parties. In such a case, the intervenor may not prevent the agency from acting within its jurisdiction, which includes negotiating settlements.

This Court has had occasion to address the wisdom and appropriateness of allowing intervention in an administrative proceeding. *See In re Island Hi–Speed Ferry, LLC,* 746 A.2d 1240, 1246 (R.I.2000) (noting that "[i]n light of the Commission's concern about the intervenors' motives, and in light of the precarious position in which Hi–Speed was placed by having to defend against its competitor before the Division and again before the Commission, the wisdom and appropriateness of the interventions in this case was questionable"). Although the practice of allowing such interventions may in some cases be unwise and sometimes may serve to muddy waters that already may be compromised, what is clear is that the intervenor is not vested with the authority to control the result.

We hasten to add, however, that we do not condone the ham-handed treatment of a town by this state agency. At a minimum, the town was entitled to courteous and professional treatment; it received neither. The DEM behaved in this case in a manner that corresponds with what Shakespeare described as "[t]he insolence of office," [10] and such behavior is not what we expect of any state agency. For Richmond to be presented with a proposed draft agreement on the very day that Charbert signed the final agreement was grossly inappropriate. Although an intervenor does not enjoy all the rights of a petitioner against whom a NOV is pending, it is entitled to reasonable notice about a potential settlement. Here, DEM demonstrated an unfortunate attitude towards one of the state's municipalities, and it did so after posing no objection to the town's intervenor status. Although Richmond had no right to stop the disposition, DEM should have afforded the town a meaningful opportunity to be heard. We trust that henceforth the agency will act with greater respect in its dealings with local officials.

### Conclusion

For the reasons stated in this opinion, we vacate the judgment of the Superior Court. The papers in this case are remanded to the Superior Court with our decision endorsed thereon.

---

**10.** William Shakespeare, Hamlet act 3, sc. 1.