DECISION
Jeanne M. Biagetti and Robert J. Biagetti, in his capacity as Successor Trustee of the Jeanne M. Biagetti Trust ("Appellants") appeal from a decision of the Rhode Island Department of Human Services ("DHS" or "Respondent"), finding that Appellant Jeanne M. Biagetti ("Ms. Biagetti") does not qualify for Medical Assistance because she has access to assets that total over the resource level permitted in the Rhode Island Department of Human Services Code of Rules ("DHS Regulations").
The sole issue raised by this administrative appeal is whether the interest of Ms. Biagetti in a trust she established in 1998 was properly considered a resource by the Department of Human Services (DHS) for the purpose of administering its medical-assistance program. For the reasons set forth below, this Court affirms the DHS decision. Jurisdiction is pursuant to G.L. 1956 § 42-35-15. *Page 2 
 I Facts and Travel
Ms. Biagetti applied for Medical Assistance ("MA") for long term care on April 1, 2009. (Admin. Hr'g Tr., November 24, 2009 ("Tr.") at 3.) On July 21, 2009, DHS issued a notice denying her MA application because her resources were greater than "the SSI-related standard resource limit of four thousand dollars." (Tr. at 2; Agency Ex. 1, Notice of Denial.) In its notice of denial, DHS wrote:
 "Dear Jeanne M. Biagetti:
 Based on the information we have, the following actions have been taken:
 The following individual(s) is (are) not eligible for RI Medical Assistance:
 . . .
 JEANNE M BIAGETTI . . .
 JEANNE M BIAGETTI's resource(s) of $58879.47 is (are) in excess of the SSI related standard resource limit of $4000.00 (RI DHS Manual, Section 0354.05).
 * * *
 CASE DENIED DUE TO EXCESS RESOURCES."
 (Agency Ex. 1.)
Following receipt of the notice of denial, Ms. Biagetti made a timely request for a hearing. (Request for a hearing, July 29, 2009, Ex.1.) In her request for hearing, Ms. Biagetti stated:
 "The bank account should not be countable as they were transferred to a trust for estate planning purposes more than sixty months prior to the filing of the Medicaid application. The trust created by the applicant in 1998 became irrevocable when she became incompetent to handle her own affairs and resigned as trustee in 2001." Id.
The hearing was held on November 24, 2009 at the DHS Office. (Tr. at 1). Appellants appeared through counsel and presented testimony from Attorney George M. *Page 3 
Prescott. Although they did not testify, Ms. Biagetti's sons, Roger and Appellant Robert Biagetti appeared at the hearing. Ms. Biagetti, who is currently suffering from Alzheimer's, did not attend.
DHS appeared without counsel and did not present any witnesses. Nonetheless, the Hearing Officer accepted exhibits from a non-attorney representative of the agency, Jacqueline Durand. Ms. Durand, a DHS social caseworker for long term care, also presented oral argument on behalf the Respondent.
The exhibits Ms. Durand offered included the MA Resource Notice, the Jeanne M. Biagetti Trust, and the DHS Resource Referral form.
Additional exhibits included Ms. Biagetti's medical records documenting the diagnosis of dementia and Alzheimer's disease. That diagnosis formed the basis of her claim that she required care in a long term care facility. (Tr. at 7; Agency Ex. 5.)
Attorney Prescott, a member of the Rhode Island Bar, testified that he prepared an estate plan for Ms. Biagetti which included a living trust. Id. at 7-8. He explained that the purpose of this living trust was to distribute her assets and thereby avoid probate upon her death. Id. Attorney Prescott testified that he advised Ms. Biagetti to fund the trust because merely executing the instrument without funding it would not accomplish the purpose for which it was drafted. Id.
The trust was established on February 11, 1998 with Jeanne M. Biagetti as the Settlor and Trustee. (Agency Ex. 4 at 1.) It provided that upon Ms. Biagetti's death, the Trustee would settle her estate with the Trust and then distribute the remainder of the trust estate in equal shares to her children and their issue per stirpes. Id. at 4. *Page 4 
During her life, Ms. Biagetti, as Trustee, had the power to manage the trust property, and "shall pay such portion or portions of the remaining or net income to the Settlor, (herself) together with such portion or portions of the principal as the Trustee (Ms. Biagetti) may at any time, or from time to time deem proper for the health and general welfare of the said beneficiary. (herself)"Id. at 3-4.
The instrument further provided that Robert J. Biagetti would succeed his mother as Trustee if Ms. Biagetti ever became disabled or incapacitated. Id. at 1. Additionally, "[i]n the event of the disability of the beneficiary, the Trustee may pay such portions of the principal income of this Trust to said beneficiary or expend the same for her benefit." Id. at 3-4.
The Trust gave the Settlor (Ms. Biagetti) the "right at any time or times to amend or revoke this instrument and the Trusts hereunder, in whole or part, by an instrument or instruments in writing, signed by her and delivered in her lifetime to the Trustee, or by Will." Id. at 5. According to attorney Prescott, it was only a revocable trust so long as Ms. Biagetti had the capacity to revoke it. He testified that once she lost that capacity due to dementia, it became an irrevocable trust. (Tr. at 8.) Robert Biagetti serves as successor trustee for his mother. (DHS Ex. 4 at 1.)
Ms. Durand was permitted to address the Hearing Officer without being sworn in as a witness and without being subject to cross-examination by Appellants' counsel. She explained that DHS issued the denial letter because its legal department reviewed the trust documents and determined that the trust assets were countable. (Tr. at 3.) She further explained that the Trust contained two certificates of deposit ("CDs") that totaled over $50,000, which is over the $4000 resource limit for MA. Id. *Page 5 
Before rejecting Ms. Biagetti's application for assistance, Ms. Durand referred the issue of her eligibility to Carol T. Giliberto, Senior Legal Counsel at DHS. This referral is documented on the Resource Referral form and reflects Ms. Durand's concern over whether Ms. Biagetti's Trust, the corpus of which included two CDs and a house, rendered her ineligible to receive assistance. (DHS Ex. 3, Resource Referral Form, April 23, 2009.) The form also includes Ms. Giliberto's response to Ms. Durand's inquiry. Ms. Giliberto opined that the Trust "is revocable and is countable." (DHS Ex. 3, Internal Memorandum from DHS Legal Counsel, June 30, 2009.) Ms. Giliberto further explained that although the house was placed into the Trust in December 2001, it would be excludable if Ms. Biagetti submitted an "intent to return statement."[1] Id. She stated, however, that the CDs and other trust assets are countable. Id.
Counsel for Appellants argued against Ms. Giliberto's interpretation of the trust as revocable. Appellants contend that the CDs are not countable because the Trust became irrevocable upon her diagnosis of dementia in April 2009. (Tr. at 12-13.)
The Hearing Officer disagreed, and following the hearing, he denied Appellants' request for relief based upon his finding that that Ms. Biagetti's assets were greater then the permitted resource level for MA. (DHS Decision, December 1, 2009 ("Decision") at 5.) The Hearing Officer addressed both Ms. Durand's presentation and the argument of counsel for the Appellants. He then analyzed the evidence, interpreted Rhode Island law regarding trusts, and concluded that DHS was correct in considering the trust assets in *Page 6 
determining Ms. Biagetti's eligibility for benefits. He found that she was ineligible because her assets put her over the resource level for MA. Id. at 4-5.
The Hearing Officer noted that under DHS Regulation 0380.05, the resource limit for an individual applying for MA is $4000, which is the standard Social Security Income related resource limit.Id. at 3. He stated that Ms. Biagetti's resource amount was properly counted as over the $4000 limit, at $58,879.47.Id. This number was based upon the value of the two certificates of deposits in her Trust. Id.
He rejected Appellants' argument that "the assets in the trust should not be a countable resource because [Ms. Biagetti] is now mentally incapable of making decision about her finances and needs Long Term Care and . . . her incapacity make [sic] the trust irrevocable." Id. The Hearing Officer acknowledged that Ms. Biagetti did not create the trust in an effort to reduce her assets to make her eligible for Medicaid. Id. Nonetheless, he found that the instrument is a revocable trust and a countable asset under the Medical Assistance Policy. Id. at 3.
Upon review of the Long Term Care Policy, the Hearing Officer observed that certain provisions apply to trusts established by an individual on or after August 11, 1993. Id. He noted that these rules apply without regard to the purpose for which the trust was established and in spite of the amount of discretion given to the trustee under the instrument. They apply regardless of any restrictions on distributions from the trust. Id. at 4. In his decision, the hearing officer stated that under Rhode Island law, a revocable trust can be revoked by the grantor, even if the trust requires Court approval of any modification or termination.Id. He further found that "[a]ny trust that terminates if *Page 7 
some action is taken by the grantor is a revocable trust even if it is called irrevocable." Id.
The Hearing Officer adopted the attorney Giliberto's determination that Ms. Biagetti's Trust was revocable finding that "the settlor reserves the right to change, amend or revoke this instrument and the Trusts hereunder, in whole or in part." Id. The Hearing Officer examined the Trust instrument and noted that the document made provisions for Ms. Biagetti's incapacity. Id.
Specifically, he stated that the trust states that
 "should [Ms. Biagetti] become physically or mentally unable to continue to serve as trustee, her son Robert Biagetti will serve as the trustee under the same terms and conditions as the appellant. If Robert is unable or unwilling to serve as Trustee then the appellant's other son Roger R. Biagetti will serve as trustee under the same terms and conditions. The trust also states that in the event of the disability of the beneficiary (appellant) the trustee may pay such portions of the principal income of this trust or expend the same for her benefit." Id.
After reviewing the Trust language, the Hearing Officer found that as a result of her diagnosis of dementia, her son succeeded her as trustee in December 2001. He noted that "Agency [p]olicy does have some exceptions to the trust provisions, such as [s]pecial [n]eeds [t]rust and [p]ooled [t]rusts; however, the Appellant's Trust does not meet the requirements stated in Policy [sic]."Id. at 4-5 He concluded that Ms. Biagetti's Trust assets put her over the resource level for MA, and he denied her request for relief. Id. at 5.
Appellants filed a timely appeal from that decision to this Court pursuant to G.L. 1956 § 42-35-15. *Page 8 
On appeal, Appellants argue that the Trust became irrevocable when she became incapacitated and her son replaced her as Trustee. They suggest that because it is an irrevocable trust, its assets are not a resource for the purposes of MA eligibility.
In response, DHS argues that the Hearing Officer correctly rejected Appellants' claim. DHS notes that the Trust remains a revocable trust because it may be amended or terminated for Ms. Biagetti's benefit, if necessary, through a guardian. Additionally, the agency contends that the corpus of the Trust (excluding the house) must be considered a countable resource because the trust instrument requires the trustee to pay both the net income and principal for Ms. Biagetti's benefit. The Court agrees.
 II Standard of Review
The court reviews a contested administrative decision pursuant to the Administrative Procedures Act, § 42-35-15(g). This section provides that:
 "The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions or decisions are:
 "(1) In violation of constitutional or statutory provisions;
 "(2) In excess of the statutory authority of the agency;
 "(3) Made upon unlawful procedure;
 "(4) Affected by other error of law;
 "(5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
 "(6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion." Sec. 42-35-15(g).
In reviewing an agency decision, this Court is limited to an examination of the certified record in deciding whether the agency's decision is supported by substantial evidence. *Page 9 Johnston Ambulatory Surgical Assocs. v. Nolan,755 A.2d 799, 804-05 (R.I. 2000) (quoting BarringtonSch. Comm. v. Rhode Island State Labor Relations Bd.,650 A.2d 479, 485 (R.I. 1994)). The Rhode Island Supreme Court has defined substantial evidence as "such relevant evidence that a reasonable mind might accept as adequate to support a conclusion and means an amount more than a scintilla but less than a preponderance." Town of Burrillville v. Rhode Island State LaborRelations Bd., 921 A.2d 113, 118 (R.I. 2007) (citations omitted). In reviewing an agency decision, a "Superior Court trial justice `shall not substitute [his or her] judgment for that of the agency as to the weight of the evidence on questions of fact.'"Interstate Navigation Co. v. Division ofPub. Utils. Carriers of R.I., 824 A.2d 1282, 1286 (R.I. 2003) (citing Rocha v. State Pub. Utils. Comm'n,694 A.2d 722, 725 (R.I. 1997)). Accordingly, only where "factual conclusions of administrative agencies . . . are totally devoid of competent evidentiary support in the record may the Superior Court reverse." Baker v. Department of Emp't Training Bd. ofReview, 637 A.2d 360, 363 (R.I. 1994) (quoting Milardo v.Coastal Res. Mgmt. Council, 434 A.2d 266, 272 (R.I. 1981)). The Court is nevertheless free to conduct de novo review of determinations of law made by the agency. Arnold v. Rhode IslandDep't of Labor Training Bd. of Review,822 A.2d 164, 167 (R.I. 2003) (citing Nolan, 755 A.2d at 805). Courts, however, accord great deference to an agency's interpretation of "a statute whose administration and enforcement have been entrusted to the agency." Town of Richmond v. RhodeIsland Dep't of Envtl. Mgmt., 941 A.2d 151, 157 (R.I. 2008) (quoting Murray v. McWalters, 868 A.2d 659, 662 (R.I. 2008)). *Page 10 
 III Discussion A DHS Regulations
The Rhode Island Medical Assistance program is a federal and state program designed to "meet the medical needs of low income persons who are age 65 or over, blind, [or] disabled." DHS Regulation 0300.05. This program was established through G.L. 1956 § 40-8 to ensure that those who need public assistance receive adequate medical care and treatment when necessary. Sec. 40-8-1(b). DHS is the agency in Rhode Island which administers all federal and state public assistance, including the MA program. G.L. 1956 § 42-12-14; DHS Regulation 0300.10. DHS must promulgate income and resource rules, fee schedules and regulations to conform to the federal Social Security Act, 42 U.S.C. § 1396 et seq., to receive federal funding under Medicaid. 40-8-13; seealso 42 U.S.C. § 1396 (stating that "[t]he sums made available under this section shall be used for making payments to the States which have submitted, and had approved by the Secretary, State plans for medical assistance"); 42 C.F.R. § 430.0 (1988) (explaining that the Social Security Act "authorizes Federal grants to States for medical assistance to low-income persons who are age 65 or over" and that [w]ithin broad federal rules, each State decides eligible groups"); 42 C.F.R. § 435.10 (requiring that state plans conform with all federal rules and specify eligibility requirements for individuals to whom Medicaid is provided).
The issue of whether DHS can consider Ms. Biagetti's assets as resources is a question of law. Chenot v. Bordeleau,561 A.2d 891, 893 (R.I. 1989). This Court, however, will accord great deference to an administrative agency when it interprets "a *Page 11 
statute whose administration and enforcement have been entrusted to the agency." Town of Richmond v. Rhode Island Dep't ofEnvtl. Mgmt., 941 A.2d 151, 157 (R.I. 2008) (quotingMurray v. McWalters, 868 A.2d 659, 662 (R.I. 2008)). Accordingly, DHS's interpretation of its MA program is owed this deference because it is the agency entrusted with the program's administration and enforcement. See Chenot,561 A.2d at 893; DHS Regulation 0300.10. The Hearing Officer stated that the trust did not meet the exceptions in the regulations for trusts. (See Decision at 5.)
The DHS Regulations provide specific rules for whether revocable trust and irrevocable trusts are countable. A revocable trust is treated under the rule as follows:
 "• The entire corpus of the trust is treated as a countable RESOURCE;
 "• Payments made form the trust to or for the benefit of the individual are counted as available INCOME;
 • * *
 • The home or former home of the individual held in a revocable trust established on or after December 1, 2000 is a countable resource. Where the home is an asset of the trust it is not subject to the exclusion provision contained in 0382.10.05." DHS Regulation 0382.50.10.
An irrevocable trust is treated as follows:
 "• Payments from trust income or principal which are made to or for the benefit of the individual are treated as INCOME to the individual;
 • Portions of the principal which COULD BE PAID to or for the benefit of individual are treated as an available RESOURCE;
 • * *
 • The home or former home of the individual held in an irrevocable trust established on or after December 1, 2000 is not subject to the intents to return exclusion provision contained in 0382.10.05." Id.
Thus, under these regulations, if a trust is revocable, the entire corpus of the trust is counted as a resource and any payments made from the trust are treated as income. Id. *Page 12 
Even if a trust is irrevocable, portions of the principal of the trust which could be paid to the beneficiary are treated as an available resource as well as payments made from the trust income or principal are treated as income. Id. Therefore, under certain circumstances, the assets of an irrevocable trust would be counted countable as a resource when determining eligibility for MA. Accordingly, the issue before the Court extends beyond a determination of whether or not the trust became irrevocable upon Ms. Biagetti's incapacity. Even if the Court accepts Appellants' contention that the Trust had become irrevocable before Ms. Biagetti applied for MA, DHS may have been justified in denying her application if portions of the principal have been or could be paid for her benefit of if income has been paid for her benefit.
 B The Jeanne M. Biagetti Trust Applied to DHSRegulations
Appellants argue that under these rules, the Trust is irrevocable, and for that reason, the corpus of the trust is not a countable resource. They aver that when Ms. Biagetti became incapacitated, the Trust became irrevocable. Appellants rely on a Louisana case,Smith v. State Department of Health Hospitals,895 So.2d 735 (La.App. 2 Cir. 2005), to support their argument that DHS should not count CDs in an applicant's trust which became irrevocable upon the applicant's incapacity.
DHS argues that the Smith case is distinguishable from the instant matter because unlike Louisiana, in Rhode Island, a support trust is a countable resource for MA. The Court agrees. In Louisiana, "[a]s a general rule, a revocable trust is a resource for purposes of Medicaid eligibility and an irrevocable trust is not a resource for that purpose." Id. at 740; seealso King v. Sec., La. Dep't of Health and Hosps.,956 So.2d 666, *Page 13 
669 (La. Ct. App. 2007); Louisiana Dep't of Health and Hosps., Medicaid Eligibility Manual § I-1720 (2006) (explaining the criteria that aid the categorization of a trust as revocable and irrevocable and that determination's effect on whether the trust is countable as a resource for Medicaid eligibility). In Rhode Island, however, as interpreted by our Rhode Island Supreme Court, the test for determining whether trust assets will be considered as a resource when determining eligibility for medical-assistant benefits does not turn only on the issue of whether the trust is irrevocable or revocable. Chenot. See 561 A.2d at 893-94. Specifically, the classification of a trust as either a support trust or a discretionary trust will determine whether a trust may be counted as a resource, even if it is an irrevocable trust.Id. at 893; see DHS Regulation 0356.50.10. Thus, this emphasis on support and discretionary trusts distinguishes Rhode Island's rules concerning MA eligibility determination from that of Louisiana.[2]
In Rhode Island, a support trust requires that "the trust assets are considered resources of the applicant." Chenot,561 A.2d at 893. (citations omitted). Conversely, a discretionary trust's assets are not considered resources of the applicant.Id. at 893-94 (citation omitted). Thus, this application depends primarily on the type of trust being considered.Id. It is essential that the Court examine the language of the trust and the circumstances under which the trust was created. 3 Austin Wakeman Scott et al., Scott Ascher onTrusts § 13.2 at 817-18 (5th ed. 2007).
A support trust is a trust in which the trustee must "apply the trust's income and/or principal as is necessary for the support, maintenance education and welfare of the *Page 14 
beneficiary." Chenot, 561 A.2d at 894. (citing First Nat'lBank of Md. v. Department of Health and Mental Hygiene,284 Md. 720 725, 399 A.2d 891, 893 (1979); Restatement (Second)Trusts § 154 (1959)); see alsoScott Ascher on Trusts § 13.2.4 at 826 (defining a support trust and stating that "the extent of the beneficiary's interest depends on the manifestation of the settlor's intention" (citing Restatement (Third) Trusts § 49, 50(2) cmt. g (2003))). Under a support trust, the beneficiary is able to compel the trustee to distribute trust income or the principal "merely by demonstrating that the money is necessary for his or her support, maintenance, education, or welfare." Chenot,561 A.2d at 894 (citations omitted). In a support trust, often the amount paid to the beneficiary as income or from the principal depends on, among other factors, "the extent of the trustee's discretion." See Scott Ascher onTrusts § 13.2.4 at 827 (collecting cases).
Alternatively, a discretionary trust is one which allows a trustee "complete and uncontrolled discretion" to distribute trust assets if and when the trustee decides. Chenot, 561 A.2d at 894 (citingFirst Nat'l Bank of Md., 284 Md. at 725, 399 A.2d at 894);see also Scott Ascher onTrusts § 13.2.3 at 824 (stating that in a discretionary trust the trustee will pay the beneficiary only as the trustee determines in his or her discretion and the beneficiary is entitled only to the payments that the trustee in his or her discretion decides to distribute (collecting cases)). In this type of trust, the beneficiary may only compel the distribution of funds upon a showing of abuse of discretion resulting from actions that are arbitrary or dishonest. Chenot, 561 A.2d at 894 (citing Town ofRandolph v. Roberts,346 Mass. 578, 579, 195 N.E.2d 72, 73 (1964); Lineback byHutchens v. Stout,79 N.C.App. 292, 297, 339 S.E.2d 103, 106 (1986)). *Page 15 
In Chenot, a father created a trust for his son that was a combination of the two types of trusts. Id. Nevertheless, he emphasized that "the trustee was to have `sole and uncontrolled discretion' to administer the trust." Id. The Rhode Island Supreme Court noted that this language was used on least six occasions. Id. As a result of this discretion, the language directing the trustee to have regard for the beneficiary's "comfort, support, and welfare" could not overcome this emphasis on the trustee's sole and uncontrolled discretion to classify the trust as a support trust, instead of a discretionary trust. Id.
In this case, the Trust is similar to that in Chenot as it is an amalgamation of a support trust and discretionary trust because it provides for Ms. Biagetti's welfare but also grants discretion on the part of the Trustee. See id. It specifically directs the Trustee that
 "[d]uring the lifetime of the Settlor, JEANNE M. BIAGETTI, the Trustee . . . shall pay such portion or portions of the remaining or net income to the Settlor, together with such portion or portions of the principal as the Trustee may at any time, or from time to time deem proper for the health and welfare of the said beneficiary. In the event of the disability of the beneficiary, the Trustee may pay such portions of the principal income of this Trust to said beneficiary or expend same for her benefit." (Agency Ex. 4, The Jeanne M. Biagetti Trust (emphasis added.))
The Trust also directs that
 "[i]n the event that any distribution under this instrument is payable to . . . a person not adjudicated incompetent, but who by reason of illness or mental or physical disability is, in the opinion of the Trustee, unable properly to administered such amount, then such amounts shall be paid out by the Trustee in such of the following ways as she, in her absolute discretion, deem best: a. directly to such beneficiary; *Page 16 
 b. to the legally appointed guardian or conservator of such beneficiary;
 c. to some relative or friend of such beneficiary;
 d. by the Trustee using such amounts directly for such beneficiary's care, support and education at any time or from time to time." Id.
Thus, the Trustee must provide the net income to Ms. Biagetti but is vested with some discretion involving the principle. Nevertheless, the provisions of the Trust always center on Ms. Biagetti. Additionally, this situation differs from that ofChenot because the trust in that case "merely direct[ed] the trustee to exercise its discretion on [the applicant's] behalf"; in this case, however, the trust not only uses the terms "health and welfare," but also directs the trustee to exercise its discretion only in support of Ms. Biagetti and requires the Trustee to pay her the net income. See Chenot, 561 A.2d at 894.
This Trust also does not emphasize the Trustee's sole and unfettered discretion; instead, it places more emphasis on the well-being and support of Ms. Biagetti. Contra id.
Furthermore, although Ms. Biagetti had full control over the Trust before she was incapacitated, the instrument did provide for the possibility of her incapacity and for successor trustees. The trust document indicates that the trustee will first provide for the settlor's well-being during her life. SeeScott Ascher on Trusts § 13.2.3 at 824-25 (stating that "the governing instrument may indicate the character of support that the trustee is to provide"). Therefore, as a result of the lack of sole discretion on the part of the trustee and the requirement that Ms. Biagetti is paid the net income and supported, this trust is a support trust. See DHS Regulation 0382.50.10 (providing the example that the personal allowances from an irrevocable trust would be countable income and "[t]he amount left . . . is a countable resource to [the applicant] since there are circumstances under which payment of this amount could be made to [the applicant]"). *Page 17 
Accordingly, under the DHS Regulations, the corpus of the Jeanne M. Biagetti Trust, not including the home, is a countable resource despite its status as either a revocable or irrevocable trust because it is a support trust. See Chenot,561 A.2d at 893-94. Thus, DHS's decision is not affected by error of law and is supported by the reliable, probative, and substantial evidence of record. As a result, it is unnecessary to reach Appellants' argument that the Trust is irrevocable and therefore cannot be counted.
 III Conclusion
After a review of the entire record, this Court finds that the DHS Decision is supported by reliable, probative, and substantial evidence and is not affected by error of law. The DHS Decision is not arbitrary or capricious and did not constitute an abuse of discretion; thus, Appellants' substantial rights have not been prejudiced. For the reasons above, this Court affirms DHS's Decision counting the corpus of the Jeanne M. Biagetti Trust, excluding the house, as a resource when determining MA eligibility. Counsel shall submit the appropriate judgment for entry.
[1] Although the record is devoid of any documentation on the issue of whether Appellants filed an "intent to return statement", Ms. Durand indicates in her oral presentation that one was filed, and she did not consider the value of the house when determining Ms. Biagetti's eligibility. (Tr. at 5-6.)
[2] As a result, Appellants' reliance on Smith is misplaced. Although Smith addresses a similar issue to that in this case, this Court will decide the matter based on the relevant Rhode Island law. *Page 1